Keith **RUEHMAN**, et al., Plaintiffs,

v.

**VILLAGE OF PALOS PARK,**
et al., Defendants.

No. 91 C 8355.

United States District Court,
N.D. Illinois, E.D.

Nov. 22, 1993.

Opinion on Reconsideration Jan. 12, 1994.

Opinion on Reconsideration Jan. 21, 1994.

---

Thomas Gerard Morrissey, Mary Denise Cahill, Law Offices of Mary Denise Cahill, Mary Louise Boelcke, Chicago, IL, for plaintiffs Keith Ruehman, Joseph Larry, and Alan Miller, Joseph P. Brown, Dean Hyde, James A. James, Rahmin Alamin and Randy Hermansen, all individually and on behalf of a class, Sherry Ratcliffe, Michael Curtan, John Sitar.

Charles E. Hervas, James Gus Sotos, Michael William Condon, Michael D. Bersani, Hervas, Sotos & Condon, Itasca, IL, for defendant Jean Moran, in her official and individual capacity as Com'r of Public Health and Safety for Village of Palos Park.

Andrew M. Raucci, Stanley T. Kusper, Jr., Kusper & Raucci, Chartered, David Lincoln Ader, John F. Donahue, Ancel, Glink, Diamond, Cope & Bush, Vickie A. Gillio, Cahill, Einspar-Wayne & Gillio, Chicago, IL, for defendants George Pfotenhauer, in his official and individual capacity as Chief of Police of Village of Dolton, as representative of a class of defendants, and Village of Dolton, a mun. corp.

Terry L. McDonald, Connie R. Barba, Lawrence R. Stasica, Cook County State's Attys. Office, Bart Thomas Murphy, Gordon B. Nash, Jr., Mary Theresa Lynch, Gardner, Carton & Douglas, Chicago, IL, for defendant Aurelia Pucinski, his successor, in her official and individual capacity as Clerk of Circuit Court of Cook County.

Mary Ellen Coghlan, IL Atty. General's Office, Chicago, IL, for defendants Richard V. White and Terry Gainer, individually.

Stephen A. Snakard, Frank K. Neidhart, McCarthy, Duffy, Neidhart & Snakard, Chicago, IL, Mary Elizabeth Dickson, Schirott & Luetkehans, P.C., Michael William Condon, Hervas, Sotos & Condon, Itasca, IL, for defendant Village of Palos Park, a mun. corp.

Mary Elizabeth Dickson, Schirott & Luetkehans, P.C., Michael William Condon, Hervas, Sotos & Condon, Itasca, IL, for defendant William Shanley, in his official and individual capacity as its Chief of Police.

Richard T. Ryan, Mark F. Smolens, Richard L. Jones, Flynn, Murphy, Ryan & Seyr-

ing, Chicago, IL, for defendants Village of La Grange, a mun. corp., Village of Wheeling, a mun. corp., and Michael Haeger, in his official capacity as its Chief of Police.

James E. Gierach, Gierach, Schussler & Walsh, Ltd., Oak Lawn, IL, for defendants Village of Worth, and Glenn Rose, in his individual and official capacity as its Chief of Police.

Daniel Richard Formeller, James Kenneth Borcia, Jacqueline A. Criswell, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for defendants City of Hickory Hills and George Dulzo, its Chief of Police in his official and individual capacity.

Susan S. Sher, Kelly Raymond Welsh, Diane J. Larsen, Patrick J. Rocks, Jr., Irene M. Schild, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL, for defendant City of Chicago, IL, a mun. corp.

Kelly Raymond Welsh, Diane J. Larsen, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL, for defendant Leroy Martin, in his official and individual capacity as Chief of Police.

Terry L. McDonald, Lawrence R. Stasica, Cook County State's Attys., Robert D. Quinlivan, Jr., Chicago, IL, for defendant Michael Sheahan, each individually and in his official capacity as Sheriff of Cook County.

### MEMORANDUM OPINION AND ORDER

HART, District Judge.

Plaintiffs in this case claimed that they were named in arrest warrants that have been quashed or recalled but are still listed as active on municipal and state computer data banks. The crux of plaintiffs' federal claims are that plaintiffs' Fourth Amendment [1] or due process rights have been violated in that defendants have failed to ade-

quately maintain the computer networks so as to prevent the arrest and detention of persons on warrants that are no longer valid. Plaintiffs originally sought to represent a class and requested both damages and injunctive relief. This case has involved at least 11 plaintiffs and 25 defendants. Following rulings on various motions, settlement of some disputes, amendments to the complaint, the withdrawal of some claims, and the withdrawal of the claim for class certification, the number of remaining parties is substantially less.[2] The remaining plaintiffs are Keith Ruehman, Alan Miller, Joseph Brown, Michael Curtan, Dean Hyde, and Jean Sitar. The remaining defendants are the Clerk of the Circuit Court of Cook County (Aurelia Pucinski), the Village of Dolton, the Village of La Grange, the City of Chicago, and the Sheriff of Cook County (Michael Sheahan). Only official capacity claims remain and the remaining claims against one defendant are only for injunctive relief. Various motions are pending, most of which are motions for summary judgment.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Oxman v. WLS–TV*, 846 F.2d 448, 452 (7th Cir.1988); *Jakubiec v. Cities Service Co.*, 844 F.2d 470, 471 (7th Cir.1988). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Id.* at 473. The nonmovant, however, must make a showing sufficient to establish any essential element for which the nonmovant will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential

---

1. It is recognized that, technically, any claim against state actors is a Fourteenth Amendment claim, which incorporates Fourth Amendment standards.

2. Many of the various claims that were or still are pending in this case are described in greater detail in this court's ruling on the motions to dismiss, *see Ruehman v. Village of Palos Park*, 1992 WL 170565 (N.D.Ill. July 16, 1992) (the issue date of that order was July 15, 1992; West-

law uses the date of entry on the docket) (*"Ruehman I "*), and ruling on plaintiffs' motion to file their Second Amended Complaint, *see Ruehman v. Village of Palos Park*, 1992 WL 281352 (N.D.Ill. Oct. 7, 1992) (*"Ruehman II"*). (Citations to *Ruehman I* and *Ruehman II* will be to the page of the Memorandum Order and Opinion filed by this court and the Westlaw page cite (*\*_).)

elements. *Id.* at 324, 106 S.Ct. at 2553. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See Covalt v. Carey Canada, Inc.,* 950 F.2d 481, 485 (7th Cir.1991); *Collins v. Associated Pathologists, Ltd.,* 844 F.2d 473, 476–77 (7th Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988). As the Seventh Circuit has summarized:

> The moving party bears the initial burden of directing the district court to the determinative issues and the available evidence that pertains to each. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323[, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265] (1986); *id.* at 325[, 106 S.Ct. at 2553] ("the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case"). Then, with respect to issues that the non-moving party will bear the burden of proving at trial, the non-moving party must come forward with affidavits, depositions, answers to interrogatories or admissions and designate specific facts which establish that there is a genuine issue for trial. *Id.* at 324[, 106 S.Ct. at 2553]. The non-moving party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. *Id.* The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586[, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538] (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insuf-ficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

*Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir. 1992).

## I. CLERK OF THE CIRCUIT COURT

▮▮▮ In *Ruehman I,* 1992 WL 170565 at 12–17 (*5–7), it was held that Pucinski was qualifiedly immune from any damages claim against her in her individual capacity. In *Ruehman II,* 1992 WL 281352 at 4–5 (*2), it was held that the official capacity damages claims against Pucinski could not be pursued because the Clerk of the Circuit Court was not a suable entity under 42 U.S.C. § 1983. *See Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).[3] Plaintiffs were not precluded from pursuing their injunctive claims against Pucinski, those claims having previously been held to involve a justiciable case or controversy for those plaintiffs who still had recalled warrants listed as active on a computer system. *See Ruehman I,* 1992 WL 170565 at 29–30 (*11–12).

Pucinski moves for summary judgment on the ground that plaintiffs lack standing to seek injunctive relief because none of them currently have any recalled warrants that are incorrectly listed as active on one of the computer systems. Plaintiffs do not dispute this factual contention and concede that they no longer have standing to seek injunctive relief. Plaintiffs, however, argue that they have standing to amend their complaint and seek declaratory relief.

Just as plaintiffs lack standing to seek injunctive relief, they also lack standing to seek declaratory relief. *Robinson v. City of Chicago,* 868 F.2d 959, 967 (7th Cir.1989), *cert. denied,* 493 U.S. 1012, 1035, 110 S.Ct. 708, 756, 107 L.Ed.2d 729, 773 (1990). The "capable of repetition, yet evading review" exception does not apply where there is no expectation that these same plaintiffs are the ones against whom any repeated violation

---

**3.** No ruling was made as to whether official capacity claims against Pucinski would also be barred by the Eleventh Amendment. *See Ruehman II,* 1992 WL 281352 at 1–5 (*1–2).

will be committed. *Id.* Also, any repeated violations will not necessarily evade review because a class potentially could be certified that would be unlikely to lose its standing once certified. *See id.* at 967–68; *Ruehman I*, 1992 WL 170565 at 29–30 (*11–12) (holding that, as of that time, plaintiffs had standing to pursue injunctive relief); *Hvorcik v. Sheahan*, 1993 WL 348569 *1 (N.D.Ill. Sept. 8, 1993) (certifying the same class as was originally sought to be certified in *Ruehman*, but with only the sheriff as a defendant).[4] The remaining claims against Pucinski will be dismissed as moot.[5] Pucinski will be dismissed from the case.

## II. SHERIFF OF COOK COUNTY

Three plaintiffs still have pending claims against Sheriff Sheahan in his official capacity: Ruehman, Miller, and Sitar. Each of these plaintiffs has moved for summary judgment as to liability against the Sheriff and the Sheriff has moved for summary judgment to dismiss the claims against him by these plaintiffs.

As is discussed in § I, *supra*, any claim for injunctive or declaratory relief is now moot in that these plaintiffs no longer have recalled warrants incorrectly listed as active on a computer system. The claim for injunctive relief against the Sheriff will be denied as moot.

### A. Eleventh Amendment

■ In reliance on *Scott v. O'Grady*, 975 F.2d 366, 371–72 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2421, 124 L.Ed.2d 643 (1993), Sheahan contends that the damages claims are barred by the Eleventh Amendment in that the Sheriff is acting as an agent of the state when processing warrants, which are orders of the state court. This argument has already been rejected twice. *See Ruehman I*, 1992 WL 170565 at 18 (*7); *Ruehman II*, 1992 WL 281352 at 5–6 (*2). Another judge in this district has also rejected the same argument made by the Sheriff in another case involving an arrest on a recalled warrant. *Hvorcik v. Sheahan*, 1993 WL 192948 *2 (N.D.Ill. June 3, 1993) ("Quite unlike the action implicated in *Scott*, Sheahan's activities that are the gravamen of the [Second Amended Complaint]—those relating to the establishment and maintenance of records as to outstanding warrants—do not represent the purely ministerial enforcement of the orders of the state judiciary (they are not the fulfillment of a 'statutory, non-discretionary duty' as *Scott*, *id.* at 371 described what was at issue there)."). If the Sheriff's alleged misconduct was merely the enforcement of a warrant, then the holding of *Scott* would likely apply to bar such a claim since that would likely be construed as the enforcement of the court's order to arrest a particular person. The alleged misconduct in this case, however, is the failure by the Sheriff to properly track which warrants are still pending and which warrants have been recalled. That is not the enforcement of a state court warrant of arrest.

■ The Sheriff also relies upon an August 29, 1983 memorandum issued by the presiding judge of the Sixth Municipal District.[6] That memorandum sets forth certain procedures for Sheriff's employees in the warrants office and Sheriff's employees who provide courtroom services. It is disputed whether this 1983 memorandum was in effect in 1991 when plaintiff Miller was arrested on a recalled warrant. In any event, the memo-

---

**4.** Also, there have been some rulings on the merits of the type of claims made by plaintiffs against the Circuit Court Clerk, *see, e.g., Murray v. City of Chicago*, 634 F.2d 365 (7th Cir.1980), *cert. dismissed*, 456 U.S. 604, 102 S.Ct. 2226, 72 L.Ed.2d 366 (1982); *Mitchell v. Aluisi*, 872 F.2d 577 (4th Cir.1989); *Mairena v. Foti*, 816 F.2d 1061 (5th Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988); *Ruehman I*, 1992 WL 170565 at 27–28(*11), and there apparently are other such claims pending in other cases filed in this court. Even without further rulings in this case on the merits of the claims against Pucinski, there may, now or in the future, be

clearly established law so that individual damages claims against Clerk's office personnel can be fully resolved on their merits.

**5.** Pucinski's pending motion for judgment on the pleadings will be denied as moot. Plaintiff Curtan's only remaining claim was against Pucinski. Curtan will be dismissed from this case.

**6.** This argument would only apply to Miller's claim. The warrants and quash and recall orders for the other plaintiffs did not originate in the Sixth Municipal District.

randum is not an order of the court. It is clear from the memorandum that it is merely reporting the procedures that the various agencies involved have agreed to implement in light of recommendations made by the Sixth Municipal warrant study committee. This memorandum does not convert any undertaking by the Sheriff to follow these procedures into the implementation of a court order. Additionally, the memorandum still leaves to the Sheriff's discretion the actual implementation of the computer tracking system and other procedures. General Order No. 8–89, which the Sheriff also relies upon, provides that police officers are to check with the Warrant Division prior to bringing prisoners for bond hearings and that the Warrant Division will complete a form noting any outstanding warrants. The order states nothing about tracking warrants or quash and recall orders and says nothing about the computer system. General Order No. 8–89 does not in any way control or limit the Sheriff's discretion in setting up a warrant tracking system. The damages claims against the Sheriff are not barred by the Eleventh Amendment.

### B. Sheriff's Practices

In his motion for summary judgment, the Sheriff asserts that the evidence does not support the existence of any unconstitutional custom or policy. In neither its supporting brief nor Local Rule 12(M) Statement of Material Facts, does defendant point to any of the facts relevant to this issue. Instead, the primary focus of his argument is the lack of a causal relationship between any custom or policy and each plaintiff's arrest. Thus, defendant does not satisfy his initial summary judgment burden of "directing the ... court to ... the available evidence that pertains to each" issue. *Selan*, 969 F.2d at 564. *Accord Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. The issue of the nonexistence of a custom or policy is not raised by the Sheriff's motion for summary judgment.

In response to plaintiffs' motions for summary judgment, the Sheriff again argues that the facts do not support the element of causation. While not expressly conceding that it is uncontested that the Sheriff had deficient and deliberately indifferent procedures for tracking warrants, the Sheriff's brief contains no argument to the contrary. The Sheriff's response to plaintiffs' Local Rule 12(M) Statements presents disputes as to some of the factual details, but does not contest the general description of the practices of the Sheriff's office. Set forth below in general terms are the practices of the Sheriff that are supported by the submission of plaintiffs, with any factual disputes presented by the Sheriff and supported by adequate submissions resolved in the Sheriff's favor.[7]

There are two computer systems for tracking warrants that are pertinent to plaintiffs' claims against the Sheriff. The Sheriff maintains the Cook County Sheriff's Police Warrant Computer System ("SPWA"). The state maintains the Illinois State Police Law Enforcement Data System ("LEADS"). Police departments throughout the state have access to LEADS, but only the Sheriff has direct access to SPWA. Other police departments may make telephone inquiries regarding SPWA listings. The Circuit Court Clerk also has a computerized system for tracking warrants. The Sheriff and other police departments do not have direct access to the Clerk's system.

Deputy sheriffs are assigned to the courtrooms of Circuit Court judges. The deputy sheriffs provide security for the courtroom. The deputy sheriffs are not responsible for providing the Sheriff's office with information about court orders entered in the courtrooms to which the deputies are assigned. The Sheriff's Fugitive Warrants Division ("FWD") is the division of the Sheriff that is responsible for tracking the status of warrants. One or more warrant clerks are assigned to the various municipal districts of the Circuit Court of Cook County. The warrant clerks are responsible for entering information on the SPWA and for also reporting certain information to LEADS.

---

7. The facts applicable to the Sheriff's motion for summary judgment, where disputes would be resolved in plaintiffs' favor, would not be different in any way that would affect the outcome of that motion. There is no need to separately recite the *custom or policy* facts applicable to the Sheriff's motion for summary judgment.

Judges of the Circuit Court have deputy court clerks assigned to their courtrooms. The Circuit Court Clerk has a quash and recall order form that consists of four copies. When a judge signs such an order, the deputy court clerk is initially responsible for processing it. The court clerk completes the quash and recall form, which is to be signed by the judge. The blue copy is provided to the defendant. The original white and the pink and yellow copies are attached to the file jacket. The file is to be forwarded to the Clerk's verification department by the end of the day. The verification clerk will check to make sure that the numbers on the order match up with the case file. The original is then placed in the file and the pink and yellow copies are placed in baskets for pick up by the Sheriff. The verification clerk also notes the disposition code for non-traffic warrants and forwards it to the computer room for entry into the Clerk's computer. The Clerk's computer system had no disposition codes for traffic warrants.

It takes two to five days for the quash and recall order to be forwarded to the Sheriff's basket for pickup. Most commonly it takes three days. After being picked up by the Sheriff's office, it is the responsibility of the Sheriff's warrant clerks to enter the recall order into SPWA. The Sheriff also maintains files with copies of active warrant orders.

There are approximately 125,000 active warrants listed on SPWA. It is estimated that 50 to 75 per cent of these are from traffic cases. Each month, the Clerk provides the Sheriff with a list of all quash and recall orders entered in non-traffic cases that month. Since 1988, the Sheriff has compared the Clerk's monthly list to the list of active warrants on SPWA. Each month, 49 to 100 non-traffic warrants are found that are listed as active despite having been quashed. The SPWA is then updated to reflect that the warrant has been quashed. No similar cross-checking is done with traffic warrants because the Clerk does not provide a report for traffic warrants.

It is known that the Clerk's office frequently fails to forward quash and recall orders to the Sheriff. Other than the cross-checking from the quash and recall report for non-traffic warrants,[8] nothing is done to remedy this known problem. The deputy sheriffs assigned for courtroom security are not required to report to the warrant clerks about quash and recall orders. No attempt is made to compare the State's Attorney's records of pending warrants with those listed on the SPWA. Except for the cross-checking described, the Sheriff's FWD does not clear a warrant unless it receives its copies of the quash and recall order from the Clerk.

The FWD is headquartered in the Criminal Courts Building located at 26th and California in Chicago. There are no FWD supervisory personnel at the suburban courthouses and the supervisors rarely visit the warrant clerks assigned to suburban courthouses. The warrant clerks receive no special training from the FWD and there is no training manual for the SPWA system. There are no written procedures of the FWD as to how quash and recall orders are to be received from the Clerk's office. The work of warrant clerks is not reviewed or audited and there is no formal review process for evaluation of warrant clerks' SPWA work. The Illinois State Police provide LEADS training for at least some warrant clerks and certify clerks to work on LEADS.

The Sixth Municipal District has the largest volume of warrants of the suburban districts. In July 1989, one of the Sixth District's two warrant clerks was on sick leave. The other clerk had been on the job for only six months at that point in time. She remained as the only Sixth District warrant clerk until October 1989. During that time period, the Sixth District had as many as 1500 warrants waiting to be entered into the computer. At least some warrants were being entered into SPWA as new warrants after the quash and recall orders had already been entered.

Sheriff warrant clerks are responsible for entering warrants and recall information

8. As is set forth below, there is also cross-checking with a limited number of other police depart- ments.

onto LEADS for felonies, violations of probation, violations of conditional discharge, and violation of supervision. Such information for misdemeanor and traffic cases can only be entered by the law enforcement agency issuing the warrant. The Sheriff cannot directly remove such warrants from LEADS. The other agencies rely on the Sheriff forwarding information about court orders issuing and recalling warrants.[9] When warrants in such cases are recalled, the Sheriff makes a computer printout indicating the warrant has been recalled and places the printout in a box for pickup by the issuing agency. Agencies often delayed in picking up copies of cancelled warrants or the cancelled warrants were misdirected. In 1992, the Sheriff began keeping records of when the other agencies picked up orders and had the other agencies sign acknowledgements that the warrants had been picked up.

Prior to 1988, reports of outstanding warrants listed on SPWA would be sent out to various police departments. The police departments would report some incorrect information to the Sheriff and incorrectly listed warrants would be removed from SPWA. Beginning in 1988, such reports were sent only to police departments that specifically requested them.

The LEADS Manual provides that local agencies should validate their records of warrants listed on LEADS, including comparing their records with those of the State's Attorney or Circuit Court Clerk. In 1988, the Illinois State Police conducted an audit of FWD procedures related to LEADS. Compliance with LEADS regulations and policies was found to be "poor." One recommendation for compliance was:

Ensure that each LEADS/NCIC record is supported by an investigative document, active warrant or complaint. The [FWD] should seek 24 hour access to the Circuit Clerk's computer file, which would enable the [FWD] to detect quash notices entered into this file but not yet picked up from the clerk's office. It is strongly recommended that the [FWD] obtain a copy of the police report, complaint, or other forms of documentation to obtain accurate caution and weapon information which should be included in the LEADS/NCIC record for officer safety. Records that do not have warrants to support their existence should be removed from LEADS/NCIC.

A LEADS audit was again conducted in February 1993. The Sheriff was again found to have failed to comply with LEADS requirements for validation and comparing records with second parties.[10]

### C. Miller

The uncontested facts as to plaintiff Alan Miller's arrest are as follows. In February 1989, Miller was arrested by Dolton Police and charged with driving with a revoked license. Miller was sentenced to court supervision, but violated the terms of his supervision and, in August 1989, was ordered to serve seven days in jail. Miller failed to report for his jail term and, on August 31, 1989, Judge McBride of the Sixth Municipal District issued a warrant for Miller's arrest. On September 7, 1989, Judge McBride quashed and recalled the warrant after Miller surrendered and began serving his seven-day sentence. This sentence was served at the Cook County Jail which is run by the Sheriff. A quash and recall order was completed, but the copies for the Sheriff remained in the Clerk's file instead of being delivered to the Clerk and forwarded to the Sheriff. At the time there was a backlog in the Sixth District for entering warrants into SPWA. The warrant that had been issued on August 31 and recalled on September 7 was entered into the computer as active on September 20, 1989. The information as to the issuance of the warrant having been forwarded by the Sheriff to the Dolton Police,

---

**9.** Other sources of information are also available, in particular the other agency's knowledge that one of its officers arrested a particular person.

**10.** The Sheriff argues that the 1993 study is irrelevant because it was conducted after the time period in which plaintiffs were arrested. Validation procedures were found to be deficient in 1988 and 1993. The evidence supports that no additional validation procedures were implemented in the interim. The Sheriff points to no evidence that procedures were any better in 1990 or 1991. The only inference that can reasonably be drawn is that validation procedures were also deficient in 1990 and 1991.

on September 23, the Dolton Police entered the warrant on LEADS.

On January 23, 1990, Miller was stopped or arrested by Oak Forest Police who had found the active warrant listed on LEADS. Miller informed the Oak Forest police officer that the warrant had been quashed and recalled by Judge McBride and produced an uncertified copy of the quash and recall order that had been provided to him upon being released from serving the seven-day term. The Oak Forest Police transferred Miller to the custody of the Dolton Police who confirmed that the warrant was listed as active on LEADS and who also contacted the Sheriff who verified the warrant was listed as active on SPWA. Having been arrested around 1:30 in the morning, Miller was held in custody overnight. At 3:08 a.m. on January 23, Dolton entered recall information into LEADS since Miller was in custody. When Miller appeared in court later that day, he informed the judge that he had served his sentence and that the arrest warrant had been quashed. The court file was obtained, which verified this information. At that time, it was discovered that the Sheriff's copies of the quash and recall order were still in the court file. Miller was released and the same day the arrest warrant was cleared from SPWA.

The Sheriff argues that Miller's arrest was not caused by any unconstitutional practice of the Sheriff. The Sheriff argues that he is not responsible for the Clerk failing to deliver the Sheriff's copies of the quash and recall order.[11] Miller argues that the Sheriff knew that the Clerk's procedures for forwarding quash and recall orders to the Sheriff were deficient and that the Sheriff acted with deliberate indifference in failing to ensure that there was an adequate procedure for informing warrant clerks of the granting of quash and recall orders. Miller also argues that whether the Clerk forwarded the Sheriff's copies of the quash and recall order is immaterial because the Sheriff had actual knowledge of that order in that a Sheriff's employee provided Miller with his copy of the quash

and recall order and it was the Sheriff who held Miller in custody for his seven-day sentence served at Cook County Jail.

■■■■ Miller was placed in the Sheriff's custody and Sheriff's employees actually had a copy of the quash and recall order. There is no procedure in place for clearing warrants based on the fact that the Sheriff has the person in his custody nor are County Jail personnel responsible for checking to see if warrants have been cleared for persons confined at the Jail. Under such circumstances, the Sheriff's office has actual knowledge that the warrant has been served and that the warrant no longer need be listed as active. Under those circumstances, failing to clear the warrant from the computer system so as to prevent rearrest on the same warrant would constitute deliberate indifference to the person's rights absent there being another means for clearing the warrant. There are, however, other means. Bringing the arrestee to court after his or her arrest is the place where documents are to be generated to clear the warrant off the computer systems. Also having County Jail personnel generate such documents would be a duplication of effort and would only be applicable to those actually detained in the Sheriff's custody. Failing to have procedures to forward information from jail personnel to the FWD could not, by itself, be deliberate indifference to arrestees' constitutional rights if there is another adequate system in place to track recalls of warrants. Therefore, even though it is undisputed that County Jail personnel had knowledge that Miller's warrant was executed and no longer needed to be active, it still must be determined if relying on the Clerk to forward copies of quash and recall orders is an inadequate system.

Arrest warrants are issued by the court and quashed and recalled by the court. LEADS and SPWA are intended to be systems by which law enforcement agencies can have quick and accurate access to information about court orders. Therefore, it is facially reasonable to rely on the courts to provide the basic information that is to be

---

**11.** The Sheriff also argues that the quash and recall order was without effect because never dated. That argument is without merit.

input into the systems. The Clerk's office has in place a procedure for forwarding to the Sheriff information that warrants have been recalled. It is not a foolproof system. Some quash and recall orders are never forwarded to the Sheriff, but how many is unknown; the Sheriff does not keep statistics that identify how many or why recalled warrants remain listed as active. The uncontested evidence does show, however, that large numbers of recalled warrants are incorrectly listed as active on SPWA.[12] The cause of this may be incorrect data entry by warrant clerks, failure to receive copies of quash and recall orders, or other reasons.

Regardless of the cause of inaccuracies, it is evident that some means of eliminating errors is necessary in order to maintain SPWA (and other systems that rely on it) as a reasonably accurate system. LEADS regulations call for validating data on LEADS by comparing it to other sources such as the Clerk's records, State's Attorney's records, and original case files. Despite known deficiencies in SPWA, the only regular validation performed is comparing SPWA's records with the Clerk's monthly report of recall orders. If the Clerk's report covered all warrants, that might be sufficient. The Clerk's report, however, only covers non-traffic warrants. No calculated attempt is made to eliminate traffic warrants (the type of warrant issued for Miller's arrest) that are incorrectly listed as active. The undisputed evidence is that there are large numbers of incorrectly listed traffic warrants, that the Sheriff's office had knowledge of this deficiency, and that there was no procedure in place for eliminating incorrect listings. Accordingly, it must be held that the Sheriff's

policy in not maintaining accurate records of traffic warrants was deliberately indifferent to the constitutional rights of persons being subjected to arrests and detention on recalled warrants. *See Murray v. City of Chicago*, 634 F.2d 365, 366–67 (7th Cir.1980), *cert. dismissed*, 456 U.S. 604, 102 S.Ct. 2226, 72 L.Ed.2d 366 (1982); *Mairena v. Foti*, 816 F.2d 1061, 1065 (5th Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988); *Cornfield v. Consolidated High School District No. 230*, 991 F.2d 1316, 1326 (7th Cir.1993); *Ruehman I*, 1992 WL 170565 at 27–28 (*11).

A proximate cause of Miller's arrest was the failure of the Clerk to forward copies of the quash and recall order to the Sheriff's basket. Had the order been properly forwarded, the warrant would have been cleared from SPWA and LEADS and the arrest would not have occurred.[13] Therefore, the Clerk's action is a "but for" cause of the arrest. The arrest in this case occurred four months after the warrant was recalled. Despite the Clerk's error, if the Sheriff had regularly audited his records, the warrant would have been cleared from the system.[14] If proper validation procedures had been in place, the warrant also would have been cleared from LEADS since the Sheriff would share such information with the issuing agency just as it sends computer printouts of recalled warrants to issuing agencies. In any event, in Miller's case, the Dolton Police specifically called the FWD to verify that the warrant was still listed as active on SPWA. The Sheriff's failure to keep accurate records, therefore, was a proximate cause of Miller's arrest.[15]

---

12. Comparing the Clerk's records to SPWA each month reveals 49 to 100 incorrect listings for non-traffic offenses, with non-traffic warrants representing as little as 25% of the warrants listed on SPWA. Comparison with records of local police departments also reveal substantial numbers of incorrectly listed warrants. The Sheriff does not contend that the error rate is statistically or otherwise insignificant as compared to the total number of warrants on the system, approximately 125,000. There is also no contention that the number of people actually arrested on recalled warrants is so low that it could not be deliberate indifference to fail to correct a system that results in very few arrests on incorrectly listed warrants.

13. Despite the large number of errors, the majority of recall orders are still correctly recorded on the system.

14. The Sheriff makes no argument that an adequate validation procedure is not reasonably possible. There is also no contention that such a procedure would not have cleared the warrant within the four-month period pertinent to Miller's claim.

15. It is noted that Miller also points to the delay in entering his warrant on SPWA. First, no evidence is presented that entering a warrant after a recall order is entered prevents the recall

Because the undisputed facts support the existence of a custom or policy that was deliberately indifferent to the illegality of persons being arrested on recalled warrants and because the undisputed facts also show that this custom or policy was a proximate cause of plaintiff Miller's arrest and detention, plaintiff is entitled to summary judgment that the Sheriff is liable to him for damages. The issue of the amount of damages remains to be resolved.

### D. Sitar

On January 20, 1991, plaintiff John Sitar was arrested by the Elk Grove Village Police on charges of driving under the influence of alcohol, illegal transportation of an alcoholic liquor, and operating a motor vehicle after his license was revoked. An arrest warrant was issued on April 11, 1991 after Sitar failed to appear for a hearing. A Third Municipal District warrant clerk entered the warrant on SPWA and the Elk Grove Police Department entered it on LEADS. As of June 28, 1991, Sitar was incarcerated at Cook County Jail. The warrant was cleared from SPWA on that date. On July 1, 1991, Sitar appeared before a judge who recalled the warrant. The original arrest warrant was stamped "warrant recalled" and filed by a Sheriff's warrant clerk. The Elk Grove Village Police did not clear the arrest warrant from LEADS. On July 31, 1991 at 3:00 p.m., Sitar was arrested by Arlington Heights police based on the warrant being listed on LEADS. Sitar was held at the Elk Grove Village jail until 11:00 a.m. on August 1. After being transported to the Rolling Meadow Court House, Sheriff's police released Sitar without a court appearance. Elk Grove police removed the warrant from LEADS on August 1.

As of 1991, the Sheriff did not require police departments to sign log books or acknowledgements that copies of cancelled warrants were received. There is no documentation that the cancelled warrant was received. Neither is there any conclusive evidence that the cancelled warrant was not received. Based on evidence of the Sheriff's and Elk Grove Police Department's usual practices in that time period, it will be a factual dispute to be resolved by the trier of fact as to whether the cancelled warrant was delivered to the Elk Grove Police Department. Sitar is not entitled to summary judgment because it is essential to his claim that it be shown that the Sheriff failed in delivering the cancelled warrant and the facts must be resolved otherwise on Sitar's motion.

It still must be considered whether, even resolving the factual dispute in Sitar's favor and assuming that the Sheriff failed to properly deliver the cancelled warrant, the Sheriff would still be entitled to summary judgment. On the Sheriff's motion, it must also be assumed that the Sheriff's procedures for delivering copies of cancelled warrants to other police agencies was deficient since plaintiff presents evidence to support that contention and the Sheriff does not argue that the uncontested facts are otherwise. The focus of the Sheriff's argument is on whether he can be considered a proximate cause of Sitar's arrest.

■■■ The Sheriff properly cleared the Sitar warrant from SPWA. The Sheriff, though, had no authority to clear the warrant from LEADS. The Elk Grove Police Department initially listed the warrant on LEADS and it was the agency that had authority to clear the warrant from LEADS. When Sitar was arrested by Arlington Heights police, they verified the warrant on LEADS. They, as well as officials at the Elk Grove Jail, could also have sought out verification from the Sheriff. Had either done so, it would have learned that SPWA showed that the warrant had been recalled. Once he

order from negating the warrant. (To the contrary, another defendant has presented evidence that it is the practice of the Sheriff to match new quash and recall orders against warrants that have not yet been entered into the system.) Second, there is no evidence that the recall order was ever entered into SPWA so the warrant would not have been cleared no matter when it was entered. Third, the delay in entering the

warrant has only been shown to be the result of a temporary backlog resulting from an employee being on sick leave for four months. There is no showing that failing to have an adequate number of available workers is a regular practice, not just a single aberration, and therefore the backlog cannot be found to be caused by a custom or policy of the Sheriff.

was placed in the custody of the Sheriff, the Sheriff immediately released Sitar. Moreover, when the warrant was recalled on July 1, Sitar appeared in a courtroom for Elk Grove Village cases. He also appeared in that courtroom on July 5. These were additional opportunities for Elk Grove police officials to learn that the warrant had been recalled and should be cleared from LEADS. Furthermore, even if the Sheriff had an additional procedure of sending monthly reports to each police department advising it of recalled warrants for that department from the prior month, it would not have helped Sitar; he was arrested in the same month that his warrant was recalled. Sitar's situation is unlike Miller's. In Miller's case, the Sheriff's own records showed that a warrant was pending. In Sitar's case, the Sheriff's system was available to provide accurate information to prevent Sitar's arrest on the LEADS information. In Sitar's case, the conduct of the Sheriff cannot be found to be a *proximate* cause of Sitar's arrest. The Sheriff is entitled to summary judgment on Sitar's claim.

### E. Ruehman

On October 13, 1986, plaintiff Keith Ruehman was arrested by an Illinois State Trooper and charged with aggravated assault, driving under the influence of intoxicating liquor, and four additional traffic offenses. The same day, Ruehman was released on two separate bail bonds. When Ruehman failed to appear in court on October 29, 1986, his bond was ordered forfeited and a warrant was issued for his arrest. The warrant was entered into SPWA on November 3, 1986. Ruehman appeared *pro se* in the Fifth Municipal District on January 6, 1987. The judge orally ordered that the arrest warrant be recalled, but no written order to that effect was completed. The written entry was: "M/D MTV–BF E & C, Tran to Chicago Ridge, Room C 1–7–87." This entry means: "Motion defendant; motion to vacate bond forfeiture entered and continued; transfer to Chicago Ridge, Room C 1–7–87." The next day, Ruehman appeared before a judge at the Chicago Ridge Court House and

that judge vacated the bond forfeiture. When that judge asked whether the warrant had been recalled, Ruehman and his counsel informed the judge that the warrant had been ordered recalled when Ruehman appeared on January 6. The second judge did not order the warrant recalled. A written order vacating the bond forfeiture was entered. On February 11, 1991, Ruehman was arrested by Chicago Ridge police and transferred to the Illinois State Police.[16] The next day, Ruehman was ordered released and a recall order was entered. The same day, a Sheriff's warrant clerk cleared the warrant from SPWA.

■ The Sheriff argues that the warrant was never recalled because no written order was entered to that effect. The judge's oral ruling, however, should suffice. In any event, the vacating of the bond forfeiture the following day would have, as a matter of law, resulted in the recall of the warrant as well, Ruehman's bond having been reinstated. *See Coclanes v. City of Chicago,* 1993 WL 124754 *2 (N.D.Ill. April 20, 1993). As of January 7, at the latest, there was no longer a valid warrant for Ruehman's arrest.

■ Ruehman argues that the Sheriff is responsible for ensuring that his records of warrants are accurate. He argues that the Sheriff cannot merely rely on information forwarded from the Clerk since the Sheriff knows that the Clerk's records frequently are inaccurate. There is no contention by Ruehman that the Sheriff had means of being directly aware of the oral recall order. He does not contend that the courtroom deputy, who provides security, should have been required to forward information about the recall order to the FWD. Ruehman, therefore, must rely on the Sheriff being constitutionally required to validate his records in order to ensure that SPWA is accurate. As previously discussed in connection with Miller's claim, in light of known deficiencies, the Sheriff is constitutionally required to validate SPWA in an attempt to prevent persons from being falsely arrested on recalled warrants.

**16.** Neither side sets forth in its statement of facts or makes an issue of whether the Chicago Ridge police relied on SPWA and/or LEADS. It will be assumed that they relied on LEADS.

Ruehman's arrest occurred prior to the time that the Sheriff began comparing SPWA to the Clerk's monthly list of recalled warrants.[17] But even if that practice was in place in 1987, it would not have helped Ruehman because the Clerk's records did not reflect that the warrant had been recalled. It is also not established that comparing the monthly list would result in a warrant being cleared by the eleventh day of the following month; Ruehman having been arrested on the eleventh day of the month following his warrant being quashed. The only other validation procedure that Ruehman points to is comparing original case files to SPWA's list of active warrants. Such a procedure would be consistent with LEADS procedures. It would have shown that Ruehman's warrant had been recalled because the warrant was marked with a large R and the warrant having been recalled would have also been evident from seeing that the bond forfeiture had been vacated. Ruehman points to no evidence as to how often such a validation would be conducted. Certainly it would not be conducted on a daily or weekly basis. It might also be unreasonable to conduct such a validation on even a monthly basis.[18] On the other hand, it might be a reasonable practice if the Sheriff limited such validations to warrants that have been pending for certain lengths of time or longer. Nothing that Ruehman submits supports that a reasonable validation practice based on comparisons to case files would have resulted in Ruehman's warrant being removed from the system a little over a month after it had been recalled. Therefore, the Sheriff is entitled to summary judgment on Ruehman's claim because the deficient practices supported by plaintiff's submissions have not been shown to be causally related to Ruehman's arrest.

In sum, the injunctive claims against the Sheriff are dismissed as moot and all other claims against the Sheriff are dismissed except plaintiff Miller's damages claim against the Sheriff in his official capacity. On that claim, summary judgment for liability is granted for Miller. At the next status hearing in this case, Miller and the Sheriff shall report on what additional procedures will be necessary to resolve the issue of Miller's damages.

### III. VILLAGE OF DOLTON

The only plaintiff with a claim against the Village of Dolton is Miller.[19] In February 1989, Miller was arrested by Dolton police for driving on a revoked license. When arrested in January 1990 on the incorrectly listed warrant, Miller was turned over to the Dolton police who verified that an active warrant was listed on LEADS and SPWA. Both Miller and Dolton have moved for summary judgment on Miller's claim against Dolton.

As is discussed in § I, *supra*, any claim for injunctive or declaratory relief is now moot in that Miller no longer has any quashed warrants still listed as active on LEADS or SPWA. The claim for injunctive relief against Dolton will be dismissed as moot.

Dolton argues that it is not responsible for Miller being arrested on a recalled warrant. It argues that it relies on information supplied by the Sheriff and that it cannot be responsible for the Sheriff or Clerk of the Circuit Court failing to provide Dolton with information that Miller's warrant had already been recalled. While Dolton had certain validation procedures in place, Miller argues that Dolton did not have adequate procedures for independently verifying the information provided by the Sheriff. Miller argues that Dolton should have periodically compared its list of active warrants with the records of the State's Attorney and that it also should have periodically checked the rec-

---

**17.** Ruehman was arrested for both aggravated assaults and traffic offenses. The record does not establish whether Ruehman's warrant would have been included on the Clerk's recall list for non-traffic offenses.

**18.** Another defendant submits evidence, uncontested by plaintiff Miller, that LEADS sends out monthly validation listings. Those listings, however, are for two to three months earlier. For example, the list for September 1989 was received on December 4, 1989.

**19.** The facts of Miller's arrest are recited in greater detail in § II(c), *supra*.

ords of the Circuit Court Clerk.[20]

In light of the deficiencies of the Clerk's and the Sheriff's warrant records, it may be appropriate for Dolton to more rigorously validate the active warrant cases it has listed on LEADS. But even assuming this would be an appropriate precautionary measure, Miller's claim against Dolton does not support a constitutional violation. In order to be a constitutional violation, Dolton's conduct must be deliberately indifferent to the constitutional rights of citizens. It must be shown that "the need for more or different" procedures "is so obvious and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989).

 Miller argues that Dolton's knowledge of the following shows that Dolton was deliberately indifferent.

1. [Dolton's] responsibility for warrants it enters into LEADS;

2. The need to validate warrants it enters into LEADS in compliance with LEADS regulations; and

3. An invalid warrant appearing as active in LEADS will cause a violation of citizens' constitutional rights.

Miller's Memorandum in Response to Dolton at 6.

This statement of factors purportedly sufficient to support deliberate indifference is both incorrect and insufficient. The third item is legally incorrect. A warrant being incorrectly listed on LEADS does not cause a constitutional violation until the person is actually arrested based on the incorrect listing. Moreover, deliberate indifference cannot be shown unless the Village is also aware that persons are being arrested on incorrectly listed warrants or, at a minimum, it is shown that such arrests are so likely to occur that failure to have additional validation procedures represents a substantial risk of having persons arrested on invalid warrants. It

is uncontested that no Dolton official had knowledge of any person, other than Miller, being arrested because of incorrectly listed LEADS information entered by Dolton. Additionally, Miller can point to no evidence that would be a basis for finding that Dolton's failure to implement further procedures was deliberately indifferent to any substantial risk of persons being arrested on incorrect warrant information. There is not even any evidence of incorrectly listed active warrants generated by Dolton, let alone there being evidence of high numbers of such warrants remaining listed for substantial periods of time. The facts presented do not support that Dolton was deliberately indifferent to any substantial likelihood of arrests on incorrectly listed warrants occurring. Therefore, Dolton is entitled to summary judgment dismissing Miller's damages claim against it.

The injunctive relief claim against Dolton will be dismissed without prejudice as moot and the damages claim will be dismissed with prejudice.

### IV. VILLAGE OF LA GRANGE

In November 1987, a Village of La Grange police officer arrested plaintiff Joseph Brown for traffic offenses. Brown was placed on court supervision for a year, but failed to appear for a January 9, 1989 hearing at the end of the one-year period. A warrant for his arrest was issued that day. He appeared two days later and the warrant was recalled on January 11, 1989. More than two years later, the warrant was still being listed on LEADS as being active. On February 27, 1991, Brown was arrested based on the LEADS listing. When he appeared in court, an order recalling the warrant was again entered. After the filing of the present lawsuit, the computer printout from the Sheriff informing La Grange of the January 11, 1989 recall order was found in a desk drawer. Due to an inadvertent clerical error of the responsible La Grange employee, the recall order had never been entered into LEADS. It is uncontested that: "No evidence exists of any instances other than Joseph Brown, dur-

---

**20.** It is uncontested that Dolton conducts some validation procedures and that it is Dolton policy to always confirm listings on LEADS with SPWA.

ing the twenty-five plus years that the Village of La Grange has participated in LEADS, of individuals having been arrested on previously recalled warrants emanating from arrests by Village of La Grange police officers." La Grange Rule 12(M) Statement ¶ 12 (admitted as true in plaintiff's Rule 12(N) Statement).

Brown argues that La Grange's validation procedures are deficient in that lists of active warrants are not compared to La Grange's own case files; lists are not requested from SPWA for comparison; and no attempt is made to obtain information directly from the Clerk of the Circuit Court.[21]

 As with the Village of Dolton, *see* § III *supra*, there may be additional validation procedures that should be implemented. However, the deliberate indifference standard is not satisfied because there is no showing that the procedures in place were so inadequate and so likely to cause an arrest on a recalled warrant that the failure to implement additional procedures would be deliberate indifference to citizens' constitutional rights. No other person whose warrant was entered on LEADS by La Grange police has ever been arrested on an invalid warrant. Also, there is no showing that any other clerical error or incorrect listing on LEADS has been caused by La Grange. La Grange is entitled to summary judgment on the damages claim against it.

The injunctive relief claim against La Grange will be dismissed without prejudice as moot and the damages claim will be dismissed with prejudice.

## V. CITY OF CHICAGO

In August 1988, an order for bond forfeiture was entered and a warrant was issued for plaintiff Dean Hyde's arrest. That warrant was recorded at the Chicago Police Department's Computerized Warrant Desk (the "Hot Desk"). Hyde appeared in court on October 13, 1988. The bond forfeiture was vacated. The warrant was no longer valid,

but no written quash and recall order was entered by the Clerk of the Circuit Court. Hyde's supervision terminated in December 1989. Over three years after the bond forfeiture and almost two years after his case had been closed, the August 1988 arrest warrant was still listed as active on the Hot Desk.

On October 26, 1991, Hyde was involved in an automobile accident while driving under the influence of alcohol and was arrested by a Chicago police officer. Hyde was charged with following too close, driving on a suspended license, driving without automobile insurance, and driving while under the influence. At the police station, a check of the Hot Desk revealed the August 1988 arrest warrant and indicated that it was still active. Hyde was detained overnight. He appeared in Holiday Court and the judge released him on separate bonds for the new arrest and the old arrest warrant. When he subsequently appeared on the 1988 arrest warrant, that warrant was quashed and recalled.[22]

During the relevant time period, the City relied on the Clerk of the Circuit Court for information concerning warrants. Warrants remained listed in the Hot Desk for as long as seven years with there being no periodic audits of the information or comparisons to other data sources. The City did periodically review the entries it had made into LEADS, but did not conduct any similar validation for the Hot Desk. Hyde contends that the City should have conducted regular audits of the Hot Desk information and that the City should not have relied solely on information supplied by the Circuit Clerk.

 Factual disputes exist that preclude the granting of either Hyde's or the City's motions for summary judgment. Factual disputes exist as to the extent of inaccuracies in the Hot Desk database and how often that might result in persons being arrested on warrants that are no longer valid. It is undisputed that the City had a policy of not verifying information listed on the Hot Desk, but it remains for the finder of fact to determine whether the risk of arrests on invalid

---

**21.** As with the claims against the other defendants, the injunctive relief claims against La Grange are dismissed without prejudice as moot.

**22.** As with the other plaintiffs, Hyde's claim for injunctive relief will be dismissed without prejudice as moot.

warrants was high enough and obvious enough that the City's failure to have such procedures would be deliberate indifference to the rights of its citizens.

 Factual disputes also exist as to whether any deficient policy that may be proven was the cause of Hyde's overnight detention following his October 1991 arrest.[23] The City presents some evidence from which a factfinder might conclude that Hyde would have been detained overnight on the October 1991 traffic offenses even if the August 1988 warrant had not been found in the Hot Desk. On the other side, that evidence is far from conclusive; the City is not entitled to summary judgment on the ground that it is undisputed that Hyde would have been detained regardless of the listing on the Hot Desk.

Hyde's claim for injunctive relief will be dismissed without prejudice. His claim for damages remains pending.

## VI. VILLAGE OF WHEELING

Plaintiff Rahmin Alamin made a claim against defendant Village of Wheeling. Alamin's attorneys subsequently lost contact with him. The attorneys finally located Alamin at an Illinois prison. At that time, Alamin informed his attorneys that he no longer wished to pursue his claim. Alamin's claim thereafter was voluntarily dismissed. Still pending is Wheeling's motion for sanctions. It seeks sanctions pursuant to Fed.R.Civ.P. 11 or, alternatively, fees to a prevailing defendant under 42 U.S.C. § 1988. Sanctions or fees are only sought from Alamin's attorneys, not from Alamin himself. Wheeling contends that there was no basis for claiming that a warrant for Alamin's arrest was based on charges brought by Wheeling.

 Alamin argues that the motion is untimely because not brought within the time limits of Fed.R.Civ.P. 59(e). That argument is without merit. Sanctions and fee petitions are collateral proceedings that need not be brought prior to the entry of judgment and therefore are not limited by the time limits of Rule 59(e). In any event, no judgment has ever been entered in this case so the time limit of Rule 59(e) could not be applicable.

Alamin's attorneys provide affidavits supporting that they interviewed Alamin and examined the case file that Alamin's public defender had. They represent that the case file and interview of Alamin supported that he was arrested on an invalid warrant. Neither affidavit expressly states that there was any basis for naming Wheeling as the defendant to Alamin's claim. Wheeling, however, provides nothing in support of its motion to show that Alamin's arrest was caused by another law enforcement agency.

 Section 1988 only permits fee awards from opposing parties, not from counsel for the opposing party. *Brown v. Borough of Chambersburg,* 903 F.2d 274, 276–77 (3d Cir.1990). It will only be considered whether Wheeling is entitled to sanctions under Rule 11.

 In their affidavits, Alamin's attorneys state that they interviewed Alamin and his public defender attorney who both stated that he had been arrested on an invalid warrant. Counsel also states that she reviewed the court file and that on the basis of her review and knowledge at that time, she concluded that the warrant was invalid and Alamin had a valid cause of action. This presentation was not contradicted by Wheeling and is sufficient to overcome a Rule 11 charge.

## VII. MOTIONS TO COMPEL

Motions to compel against various parties were pending. In light of today's ruling, however, all those motions are moot except as regards the City of Chicago. Plaintiff Hyde apparently still seeks further statistical information regarding arrests on invalid warrants. This issue will be addressed at the next status hearing. In the meantime the

---

**23.** Hyde argues that being required to appear in court for another hearing on the old arrest warrant is also an injury caused by the City. However, once Hyde appeared before a judge who then ordered that he appear again based on the court records before the judge, the causal link with the City was broken and the City was not responsible for Hyde having to appear in court again.

parties should seek to resolve the discovery dispute.

## VIII. CONCLUSION

All remaining claims are dismissed except for Miller's damages claim against the Sheriff and Hyde's damages claim against the City of Chicago. Summary judgment on liability is granted for Miller against the Sheriff. At the next status hearing, Miller and the Sheriff shall report on the possibility of settlement or otherwise resolving this case without a trial. Hyde and the City of Chicago shall report on any remaining discovery dispute and whether their dispute can be resolved short of a trial. In the meantime, a date has been set for the filing of a final pretrial order.

IT IS THEREFORE ORDERED that:

(1) Plaintiffs' motions to compel [218, 219, 239] are denied as moot. Plaintiffs' motion to compel [259], as brought by Hyde against the City of Chicago, is continued to December 8, 1993 at 9:15 a.m. That motion to compel [259] is denied as moot as brought by the other plaintiffs or against other defendants.

(2) The Village of Wheeling's motion for sanctions [246] is denied.

(3) The City of Chicago's motion to strike [365] is denied. Plaintiff Hyde's motion for leave to file objections [367] is granted. Defendant Dolton's motion to strike [351] is denied.

(4) Plaintiff Miller's motion for summary judgment against the Sheriff [279] is granted. Defendant Michael Sheahan, in his official capacity as Sheriff of Cook County, is held to be liable to plaintiff Alan Miller.

(5) Plaintiffs Hyde's [285], Brown's [323], Miller's (as against Dolton) [338], Sitar's, and Ruehman's motions for summary judgment are denied.

(6) Defendants Sheahan's [292] and the City of Chicago's [302] motions for summary judgment are granted in part and denied in part.

(7) Defendants La Grange's [296], Pucinski's [311], and Dolton's [305] motions for summary judgment are granted. Defendant

Pucinski's motion for judgment on the pleadings [309] is denied without prejudice as moot.

(8) All remaining claims for injunctive relief are dismissed without prejudice as moot. All other remaining claims of plaintiffs Brown, Sitar, and Ruehman are dismissed with prejudice. Plaintiffs Brown, Sitar, Ruehman, and Curtan are dismissed from this case. Defendants Pucinski, Village of Dolton, and Village of La Grange are dismissed from this case.

(9) Status hearing set for December 8, 1993 at 9:15 a.m. On January 12, 1994 at 9:15 a.m., the remaining parties shall file, in open court, an original and copy of a top-bound final pretrial order in full compliance with Local Rule 5.00.

## MEMORANDUM OPINION AND ORDER ON RECONSIDERATION

### Jan. 12, 1994

In an order dated November 22, 1993 ("*Ruehman III*"), various motions for summary judgment and other motions were ruled upon. Following the ruling, all remaining claims had been dismissed except for plaintiff Alan Miller's damages claim against defendant Sheriff Michael Sheahan in his official capacity and plaintiff Dean Hyde's damages claim against defendant City of Chicago. Summary judgment on liability was granted in favor of Miller and against the Sheriff in his official capacity. Subsequently, four motions for reconsideration were filed. Plaintiff Keith Ruehman moves for reconsideration reinstating his damages claim against the Sheriff in his official capacity. Plaintiff Hyde moves for reconsideration as to an aspect of his potential damages. The City of Chicago moves for reconsideration requesting dismissal of Hyde's remaining claims against it. The Sheriff moves for reconsideration of the order granting summary judgment on Miller's claim and instead requests summary judgment dismissing Miller's claim.

The November 22 Order was entered on the docket on December 3. Since it did not resolve all the remaining claims in this case,

no Rule 58 judgment was entered.[1] On December 7, the Sheriff filed his motion for reconsideration which was presented in court on December 8. On December 17, the Sheriff filed a notice of appeal from the denial of Eleventh Amendment immunity. *See Ruehman III* at 1049–50.

The Supreme Court has held that interlocutory appeals may be taken from denials of Eleventh Amendment immunity. *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.,* — U.S. —, —, 113 S.Ct. 684, 689, 121 L.Ed.2d 605 (1993). *Puerto Rico Aqueduct* applies to Eleventh Amendment immunity the reasoning of *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), as to interlocutory appeals of denials of qualified immunity. *See Puerto Rico Aqueduct,* — U.S. at —, —, 113 S.Ct. at 687, 689. Presumably the same rules apply to both types of appeals. Upon the filing of a nonfrivolous interlocutory appeal from an immunity ruling, the district court should stay any further proceedings against that party. *Apostol v. Gallion,* 870 F.2d 1335 (7th Cir.1989).

When there is a final judgment, a notice of appeal filed after a timely Rule 59(e) motion has no immediate effect; the time for filing the notice does not begin to run until after entry of the ruling on the Rule 59(e) motion. *See* Fed.R.App.P. 4(a)(4);[2] *Wielgos v. Commonwealth Edison Co.,* 892 F.2d 509, 511 (7th Cir.1989). Federal Rule of Civil Procedure 54(a) defines "judgment" as including any order from which an appeal lies. Therefore, technically, the order denying Eleventh Amendment immunity, which is an appealable order, is a judgment. None of the motions for reconsideration raise the Eleventh Amendment immunity issue. The Sheriff, however, seeks reconsideration on Miller's claim. Granting that motion would moot the Eleventh Amendment issue since it would result in Miller's claim being dismissed on other grounds. The Sheriff's motion should be viewed as a Rule 59(e) motion and therefore a motion which brings into play the provisions of Fed.R.App.P. 4(a)(4). *Martinez v. Sullivan,* 874 F.2d 751, 753 (10th Cir.1989). Accordingly, the Sheriff's notice of appeal has no present effect and this court has not lost jurisdiction to consider the motions for reconsideration that involve the Sheriff. *Id.* at 754; *Wielgos,* 892 F.2d at 511.

The City of Chicago argues that defendant Hyde's motion to vacate is untimely because not filed within the 10 days permitted by Fed.R.Civ.P. 59(e). This argument is without merit for a number of reasons. Hyde's motion was filed on December 8 and presented in court on December 10.[3]

First, as between Hyde and the City, there is no appealable order. Therefore, as to those parties, the November 22 order is not a judgment and the time limits of Rule 59(e) do not apply. Even if Hyde's motion is properly characterized as a Rule 59(e) motion, the November 22 Order was not a final judgment. Since this case is still pending, independent of Rule 59(e), this court has the inherent authority to consider a motion for reconsideration at any time prior

---

1. Federal Rule of Civil Procedure 58 is the Rule that requires the entry of judgments on separate forms. Its reference to Rule 54(b) implies that it only applies to final judgments. *Cf. Kurowski v. Krajewski,* 848 F.2d 767, 772 (7th Cir.), *cert. denied,* 488 U.S. 926, 109 S.Ct. 309, 102 L.Ed.2d 328 (1988).

2. Federal Rule of Appellate Procedure 4(a)(4) previously provided that a notice of appeal filed after a Rule 59(e) motion had no effect and a new notice of appeal had to be filed after entry of the ruling on the Rule 59(e) motion. Effective December 1, 1993, amended Rule 4(a)(4) provides:

 A notice of appeal filed after announcement of the entry of the judgment but before disposition of any of the above motions is ineffective to appeal from the judgment or order, or part thereof, specified in the notice of appeal, until the date of entry of the order disposing of the last such motion outstanding. Appellate review of an order disposing of any of the above motions requires the party, in compliance with Appellate Rule 3(c), to amend a previously filed notice of appeal. A party intending to challenge an alteration or amendment of the judgment shall file an amended notice of appeal within the time prescribed by this Rule 4 measured from the entry of the order disposing of the last such motion outstanding.

 Fed.R.App.P. 4(a)(4).

3. An amended motion was filed on December 10. The amendment apparently does not contain any substantive changes.

to the entry of a final judgment. *See Pivot Point International, Inc. v. Charlene Products, Inc.,* 816 F.Supp. 1286, 1288 (N.D.Ill. 1993); *A. Hollow Metal Warehouse v. United States Fidelity & Guaranty Co.,* 700 F.Supp. 410, 411–12 (N.D.Ill.1988); *Turner v. Chicago Housing Authority,* 771 F.Supp. 924, 926 n. 2 (N.D.Ill.1991), *vacated & remanded on other grounds,* 969 F.2d 461 (7th Cir.1992). Finally, even if the time limits of Rule 59(e) apply, time is measured from the entry of judgment. The earliest time at which judgment could be considered entered would be when the order was entered on the docket on December 3. Hyde's motion was filed less than 10 court days after the entry of the order. Hyde's motion was not untimely and will be considered on its merits.

■ The City's and Hyde's motions will be considered first. The City again argues that it cannot be considered the cause of Hyde's detention because grounds, other than the invalid warrant, existed for detaining Hyde. Hyde was arrested on a new traffic offense. If this were his first offense, he would have been released on a $100 bond. Given a prior conviction, however, he could have been charged with a felony and, if so charged, could not have been released on a $100 bond issued by the police. The prior warrant, that was incorrectly listed as being active, was also a basis for detaining Hyde. Factual disputes exist as to whether Hyde was detained solely because of the prior warrant or whether the police would have detained him based on a felony charge even if they had not known of the prior warrant. On the City's summary judgment motion, it must be assumed that Hyde was detained only because of the incorrectly listed warrant. The City argues that, on Hyde's due process claim,[4] causation does not exist as long as other grounds existed for detaining Hyde, regardless of whether those were the actual grounds on which he was held.

The City relies on *Jones v. City of Chicago,* 856 F.2d 985, 993 (7th Cir.1988), which states that "elementary principles of legal causation ... are as applicable to constitutional torts as to common law torts." *Jones* does not support the City. In *Jones,* it was held that prosecutors' decision to pursue charges and press for detention did not break the causal link where the prosecutors relied on false information supplied by defendant police officers. *Jones'* discussion of causation would only support the proposition that causation is not satisfied if it is shown that detention *would* have occurred regardless of the defendants' misconduct, not merely if it is shown that detention *could* have occurred regardless of the defendants' misconduct. A factual dispute exists as to whether Hyde *would* have been detained regardless of the incorrect listing of an active warrant. Causation is not a basis for dismissing Hyde's entire claim.

The City also contends on reconsideration that Hyde's evidence was insufficient to support the existence of a policy or custom. The prior holding that a factual dispute exists on this issue will stand. As pointed out by the City, however, it is noted that *Ruehman III* may contain an imprecise statement. In *Ruehman III,* at 1059–60, it is stated: "It is undisputed that the City had a policy of not verifying information listed on the Hot Desk, but it remains for the finder of fact to determine whether the risk of arrests on invalid warrants was high enough and obvious enough that the City's failure to have such procedures would be deliberate indifference to the rights of its citizens." The City argues that this statement implies that too broad a policy is being considered, particularly because it refers to arrests, not detentions, and also refers to arrests on other than traffic offenses. The allegedly improper policy is the failure to keep accurate records of active warrants while relying on those records as if accurate. That policy can result not just in improper arrests but also, as is claimed in Hyde's case, improper detentions. As to Hyde, the deficient recordkeeping procedures must be proven and that deficiency must be shown to have caused his detention. To prove deliberate indifference, it must also be shown that the risk of harm from the policy was high enough and obvious enough to support a finding of deliberate indifference. Whether the real or potential harm caused by the deficient recordkeeping is an

---

4. Hyde agrees that his detention claim is a due process claim.

arrest or detention, does not matter as long as the risk is great enough to support a finding of deliberate indifference. Whether the actual or potential harm is an arrest or detention, it is still evidence relevant to whether the policy that must be proven was one of deliberate indifference to the rights of citizens in Chicago.

The City's motion for reconsideration will be denied in its entirety.

Hyde complains about the ruling that his having to return for a second court hearing cannot be considered part of the injury caused by the alleged constitutional deprivation. See Ruehman III, at 1060 n. 23. It was held that the state court judge's decision to defer the ruling to another judge cannot be considered to be caused by the City. Hyde argues that the judge had no court records in front of him and relied only on the City's Hot Desk listing of an active warrant. There is disputed evidence as to whether the judge, who was sitting in Holiday Court, would have had access to any court records. It is undisputed that the judge did not actually have any court records from Hyde's old case in front of him at the time he released Hyde from custody and set another hearing in the old case. Regardless, even resolving any dispute in Hyde's favor, the City cannot be held responsible for the judge not having access to the court's own records. Hyde's motion for reconsideration will be denied.

Summary judgment on liability was granted in favor of plaintiff Miller on his claim against the Sheriff. It was held that the uncontested facts showed that Miller's arrest, which occurred approximately four months after the warrant for his arrest had been recalled, was proximately caused by the Sheriff's failure to keep an accurate record of arrest warrants. This included a deliberately indifferent policy of failing to regularly validate traffic warrant records so as to maintain current and accurate records. As was stated in the order: "The Sheriff [made] no argument that an adequate validation procedure is not reasonably possible. There is also no contention that such a procedure would not have cleared the warrant within the four-month period pertinent to Miller's claim." Ruehman III, at 1054 n. 14. On reconsideration, the Sheriff argues for the first time that no reasonable procedure existed by which Miller's warrant could have been cleared off the Sheriff's system within that time period.[5]

▮ The parties are in agreement that the Sheriff did not have another database to run a comparison on that would have revealed the incorrect listing of Miller's warrant. The parties also agree that a check of Miller's court file would have revealed that Miller's warrant had been recalled. The Sheriff argues that it has not been incontestably proven that a validation through checks of individual case files is reasonably possible. The burden is on Miller to prove that the Sheriff's procedures were deficient. This includes proof that there were reasonable and effective alternatives. The burden was on Miller to incontestably show that checking individual court files (or another effective procedure) was reasonably possible.[6] Miller does not contend that he has made such a

---

5. Other causation arguments contained in the motion for reconsideration were previously considered and rejected in Ruehman III. The Sheriff also argues that Ruehman III, at 1053, incorrectly indicates that the Sheriff had knowledge of the recall of Miller's warrant in that Sheriff personnel at the County Jail were aware of the quash order. That argument need not be considered in that, even resolving that fact in the manner described in Ruehman III, the fact was held to be immaterial and not a basis for granting summary judgment in Miller's favor.

6. No evidence was presented by either side as to the age of pending warrants. Perhaps the number of warrants of a certain age is small enough to reasonably allow for periodically checking individual case files for cases of a certain age. Plaintiff would have to show that checking individual case files after traffic warrants are four months old or less was reasonably possible. Reasonableness would be judged by the amount of warrants of that age, the time and expense of searching individual files, the amount of corrections likely to result, the amount of improper arrests or detentions likely to be prevented, and any other relevant factors.

showing.[7]

■ Miller argues that this issue should not be considered on reconsideration because it was not raised previously. No final judgment has been entered in this case. It is well within this court's discretion to consider new arguments on reconsideration of an interlocutory order. *Bankard v. First Carolina Communications, Inc.*, 1992 WL 3694 *6 n. 3 (N.D.Ill. Jan. 6, 1992). The Sheriff's motion will be granted in part. The holding of liability in Miller's favor will be vacated. The only issue remaining for trial, however, is the question of whether there were reasonable alternative procedures that the Sheriff could have implemented that would have prevented Miller from being arrested on the recalled warrant, plus the issue of damages.

Plaintiff Ruehman requests reconsideration of the ruling dismissing his claim against the Sheriff. In reciting the facts underlying Ruehman's claim, it was correctly stated that his warrant was recalled effective January 6 or 7, 1987. *Ruehman III*, at 1056. It was also correctly stated that Ruehman was arrested on the recalled warrant on February 11, 1991. *Id.* In discussing the merits of Ruehman's claim, however, it was inadvertently assumed that Ruehman's arrest occurred one month after the warrant was recalled, instead of four years and one month after the recall of the warrant. *Id.* at 1057. Therefore, the ground for dismissing Ruehman's claim, that a reasonable validation procedure could not have eliminated the warrant within one month, is not consistent with the facts.[8] Ruehman's claim against the Sheriff must be reconsidered.

It must be considered whether the evidence incontestably supports that reasonable validation procedures would or would not have removed Ruehman's warrant from being listed as active on SPWA within four years after the warrant had been recalled. The Sheriff argues that no examination of Ruehman's court file would have revealed that the warrant had been recalled because that order had been made orally. As was discussed in *Ruehman III*, at 1056, the vacating of the bond forfeiture order made clear that the warrant was recalled. A properly trained person would be able to recognize, from this order or other entries in the file,[9] that the warrant had been recalled.[10]

The Sheriff also argues that the record does not incontestably show that it would be feasibly possible to physically check case files. Ruehman's warrant was issued in October 1986 and recalled in January 1987. Ruehman was arrested on the warrant in

---

7. There is no contention by the Sheriff that the evidence is incontestably to the contrary and therefore the Sheriff is entitled to summary judgment on this ground. On reconsideration, the Sheriff only contends that a disputed fact issue exists. Even if the Sheriff were to now argue that the facts incontestably show there is no feasible procedure, he did not raise that factual issue in the original motion and therefore Miller was not obliged to provide proof in support of that fact.

8. Also, it was stated in *Ruehman III*, at 1056 n. 16, that neither side made an issue of whether Ruehman was arrested based on a listing on SPWA or LEADS. Ruehman now points to the portions of the record that show the arrest was based on the SPWA listing, the listing on LEADS having been deleted on January 12, 1987.

9. As was stated in *Ruehman III*, at 1057, the warrant was also marked with a R, indicating it had been recalled.

10. The Sheriff also argues, without citing to the record, that the aggravated assault charge was marked as SOL (stricken on leave). Citing *People v. Woolsey*, 139 Ill.2d 157, 151 Ill.Dec. 309, 310–11, 564 N.E.2d 764, 765–66 (1990), the Sheriff argues that this means Ruehman's case was still an open case. *Woolsey* holds that an SOL order is not a final disposition because the prosecution can still decide to reinstate and prosecute the case. *Woolsey*, however, does not hold that entry of an SOL order means that a case is still active. "[T]he entry of a *nolle prosequi* is not a final disposition of a case but, like a nonsuit in a civil suit, is a procedure which reverts the matter to the same condition which existed before the commencement of the prosecution. The effect of a *nolle prosequi* is to dismiss the indictment or other charging instrument and to permit the defendant to be free without entering into a recognizance to appear when called." *Id.* at 311, 564 N.E.2d at 766 (citations omitted). Contrary to the Sheriff's contention, an SOL order indicates that there would be no basis for detaining a defendant on the charge that was SOL.

February 1991. The Sheriff points to the fact that approximately 125,000 active warrants are pending on SPWA at any given time and argues it is not feasible to physically check the court files for each of these cases. Prevention of Ruehman's arrest, however, would not have required checking every active warrant. If the Sheriff had a policy of periodically checking the court files once an active warrant is one year old or two years old or even four years old, the erroneous listing as to Ruehman's warrant would have been discovered. Still, there is no evidence as to how many older warrants exist on the system at any given time. While it may be doubted that checking on warrants that are four years or more old is infeasible, that cannot be decided as a matter of law without more particular evidence as to the age of pending warrants being available.

■ The record also shows that Ruehman's warrant was deleted from LEADS within a few days after being recalled. Obviously, there was some means of being informed that the warrant had been recalled. Perhaps the responsible police agency was directly informed of his arrest. But regardless how it was known to delete the warrant from LEADS, once the warrant was deleted, a validation of the SPWA computer records with the LEADS records would have revealed the discrepancy and given the Sheriff reason to delete the SPWA listing, or at least check the court file. The Sheriff does not argue that a validation of SPWA records based on LEADS was infeasible. Therefore, there was a reasonable procedure that could have been implemented that would have prevented Ruehman's arrest on an outdated warrant.

As is otherwise discussed in *Ruehman III*, Ruehman had proved the other elements of his claim. Now that it is also held that the uncontested facts show that there was a feasible means for ensuring the accuracy of Ruehman's SPWA record, Ruehman is entitled to summary judgment on liability against the Sheriff in his official capacity. The question of damages remains to be resolved.

As was done following the November 22 ruling, the parties will be directed to file a

pretrial order on the remaining issues in the case. However, upon entry of today's order, the Sheriff's notice of appeal as to denial of Eleventh Amendment immunity will become effective. That will require a stay of further proceedings as to Miller's claim against the Sheriff. *See Apostol v. Gallion,* 870 F.2d 1335 (7th Cir.1989). It still would be possible to proceed on Hyde's claim against the City. Also, the only claim pending against the Sheriff at the time the December 17 notice of appeal was filed was the claim of Miller. The December 17 notice of appeal, therefore, is construed as not applying to Ruehman's claim against the Sheriff. Unless and until the Sheriff appeals the Eleventh Amendment ruling as to Ruehman, no stay is in effect as to Ruehman's claim. However, if a notice of appeal as to Ruehman's claim is filed, no further action will be taken as to that part of the case pending resolution of the appeal.

Hyde and the City should complete any remaining discovery. At the next status hearing, the Sheriff shall report on the status of any appeal as to Ruehman's claim against the Sheriff. The parties shall also be prepared to report on whether it would be appropriate to proceed with the filing of a pretrial order by Hyde and the City in order to try Hyde's claim separately from the remaining claims against the Sheriff.

IT IS THEREFORE ORDERED that:

(1) Defendant City of Chicago's motion to reconsider or, in the alternative, to clarify the order of November 22, 1993 [373] is denied.

(2) Plaintiff Dean Hyde's motion to vacate judgment [377] is denied without prejudice as moot. Plaintiff Dean Hyde's amended motion to vacate judgment [380] is denied.

(3) Defendant Michael Sheahan's motion for reconsideration of portions of the court's order of November 22, 1993 [374] is granted in part and denied in part. The order granting plaintiff Alan Miller summary judgment on liability against defendant Michael Sheahan is vacated.

(4) Plaintiff Keith Ruehman's motion to vacate judgment [375] is granted. The order dismissing plaintiff Keith Ruehman's dam-

ages claim against defendant Michael Sheahan in his official capacity is vacated. Defendant Michael Sheahan, in his official capacity as Sheriff of Cook County, is held to be liable on the claim of plaintiff Keith Ruehman.

(5) Defendant Michael Sheahan's motion to stay proceedings pending appeal is granted in part and denied in part. Action as to plaintiff Alan Miller's claim against defendant Michael Sheahan is stayed during the pendency of the appeal of that claim.

(6) Status hearing set for February 17, 1994 at 9:15 a.m. Any pending discovery between Hyde and the City of Chicago is to be completed by February 16, 1994.

## MEMORANDUM OPINION AND ORDER ON SECOND RECONSIDERATION

### Jan. 21, 1994

Defendant Sheriff Sheahan seeks reconsideration of the January 12, 1994 Order as it pertains to plaintiff Ruehman. The Sheriff repeats previously rejected arguments as to why he is entitled to summary judgment against Ruehman. Those arguments are again found to lack merit. For the first time, Sheriff Sheahan makes arguments as to why the basis for granting summary judgment on liability in Ruehman's favor is insufficient. While the parties' piecemeal presentation of arguments in this case is not condoned, as was done on the prior motions for reconsideration of interlocutory rulings, this court will exercise its discretion to consider new arguments. On the evidence and arguments now before the court, it is held that factual disputes exist that preclude the granting of summary judgment in either Ruehman's or the Sheriff's favor.

Plaintiff Miller moves for reconsideration reinstating the grant of summary judgment on liability in his favor and against the Sheriff. As previously held, factual disputes exist

as to whether there was a reasonable and feasible means by which the erroneous listing as to Miller's warrant could have been corrected in time to prevent his arrest on the recalled warrant. This motion will be denied.

Plaintiff Miller moves for reconsideration of the aspect of the November 22, 1993 ruling in which it was held that further discovery as to the SPWA was a moot issue. Since it is now held that there are triable issues as to Miller's and Ruehman's claims against the Sheriff, that issue may not be moot. However, with the entry of today's order denying Miller's reconsideration motion as to summary judgment, the Sheriff's appeal becomes effective and any further action as to Miller's claim is stayed. Presumably, the Sheriff will also appeal the Eleventh Amendment ruling as to Ruehman and further action as to Ruehman's claims will also be stayed. In the meantime, no further discovery is to be taken by either Ruehman or Miller.[1] Plaintiff Miller's motion for reconsideration is denied without prejudice to renewing the motion after the Seventh Circuit rules in the Sheriff's appeal.

Plaintiff Hyde's motion to compel against the City of Chicago is now granted. Complete computer records no longer being available for the date of Hyde's arrest in 1991, it is appropriate to provide records of a date in July 1992 that are still available. Subject to Hyde reimbursing the City's costs in producing the tape and subject to the parties' agreed protective order, the City shall provide Hyde with the computer tape.

Hyde also moves for additional discovery regarding the question of whether he would have been detained based on felony charges for his traffic offense even if his recalled warrant had not been incorrectly listed in the City's computer records.[2] This motion is granted. Hyde may issue a request for production of documents related to this issue

---

1. If the Sheriff does not appeal the Ruehman Eleventh Amendment ruling within 30 days of the entry of today's order, plaintiff Ruehman may then move for further discovery.

2. In court during the hearing on this motion, the City made brief reference to this being a question of law. The City's argument that the mere possibility that Hyde could have been charged with a felony makes his detention permissible as a matter of law was previously rejected. The only question is whether, factually as a matter of causation, the Chicago police officers would actually have detained Hyde if they had not instead relied on the incorrectly listed warrant. If the City wishes to concede this factual issue and will stipulate that Hyde would not have, based on felony charges, been detained by the police offi-

and/or depose the police officers or other relevant witnesses. Further discovery by Hyde is to be completed by March 16, 1994.

IT IS THEREFORE ORDERED that:

(1) Defendant Sheahan's motion to vacate the judgment of January 12, 1994 in favor of plaintiff Keith Ruehman is granted in part and denied in part. Summary judgment on liability in favor of Ruehman is vacated.

(2) Plaintiff Miller's motion to reconsider and clarify ruling of January 12, 1994 is denied.

(3) Plaintiff Miller's motion to reconsider ruling of November 22, 1993 is denied without prejudice.

(4) Plaintiff Hyde's motion to compel [259] is granted in part and denied in part. The City shall provide Hyde with a computer tape for a date in July 1992.

(5) Plaintiff Hyde's motion to allow additional discovery is granted.

(6) Further proceedings as to Miller's and Ruehman's claims against the Sheriff are stayed. Hyde is to complete additional discovery by March 16, 1994. Status hearing set for February 24, 1994 at 9:15 a.m.

cers who had him in custody, the City need not provide further discovery on this issue.