Randy JENSEN, et al.,
Plaintiffs-Appellees,

v.

STATE BOARD OF TAX COMMIS-
SIONERS OF the STATE OF
INDIANA, et al., Defendants-Appellants.

No. 84–1967.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 23, 1985.

Decided May 21, 1985.

William M. Evans, Bose McKinney & Evans, Indianapolis, Ind., for plaintiffs-appellees.

James R. Green, Asst. Atty. Gen., Indianapolis, Ind., for defendants-appellants.

Before COFFEY and FLAUM, Circuit Judges, and JAMESON, Senior District Judge.*

FLAUM, Circuit Judge.

The State Board of Tax Commissioners of the State of Indiana ("State Tax Board") and its three individual members appeal from a district court order requiring them to approve Lake County, Indiana's request for authorization to levy an increased tax on County property for the purpose of funding certain improvements in the Lake County Jail. The court issued the order after concluding that the State Tax Board's prior denial of the request hindered the County's efforts to comply with a consent decree mandating the elimination of unconstitutional conditions in the jail. For the reasons set forth below, we reverse.

## I.

The roots of the present controversy extend back over ten years to a suit filed in the Northern District of Indiana on September 13, 1974, by plaintiffs Randy Jensen and Othello Upshaw individually and as representatives of a class of inmates in the Lake County Jail. The suit—which named as defendants Lake County, the Lake

---

* The Honorable William J. Jameson, Senior District Judge for the District of Montana, is sitting by designation.

County Council, and a number of County officials (collectively referred to as "the County defendants"), but not the state of Indiana or any of its officials—alleged that conditions in the jail, such as the lack of proper medical care, violated the Eighth and Fourteenth Amendments to the Constitution. After six years of litigation, the parties finally entered into a consent decree which was approved by Judge Sharp on October 21, 1980. The three-page decree required the County defendants to take several generally defined steps to improve conditions in the jail, such as complying with the procedures set forth in the Lake County Jail Manual, and to pay each named plaintiff $500 in damages.

On May 29, 1981, the plaintiffs filed a motion charging the County defendants with failing to comply with and hence being in civil contempt of the consent decree. A hearing on the motion was held a little over a year later before Judge Kanne, who had since assumed responsibility for the case from Judge Sharp. Before Judge Kanne ruled on the motion, the parties reached another settlement that was entered by the court as a "Judgment Order" on June 28, 1982. In this sixteen-page order, Lake County expressly admitted that it was in contempt of the 1980 consent decree, and the County defendants as a whole agreed to implement a long and very specific list of reforms to improve the Lake County Jail. In the portion of the order most pertinent to the instant case, the County defendants agreed to provide a separate area of the jail, along with numerous additional services, for mentally ill inmates. On March 7, 1983, the court imposed a $500,000 fine against Lake County for civil contempt, which was suspended on the condition that the County defendants comply with the court's order.

In order to comply with provisions of the order concerning mentally ill inmates, the Lake County Council decided to contract with South Lake Center for Mental Health, Inc. ("South Lake"), a private, not-for-profit corporation, to develop and then operate a mental health facility on the fourth floor of the jail. The plan called for the Council to lease the fourth floor to South Lake, which in turn would contract with others to perform the necessary construction work. South Lake also would incur debt of approximately $4,000,000 for the project, which the County would repay in annual installments until the debt was retired. In meetings held during the fall of 1983, the Council voted to appropriate $757,400 in its 1984 budget for the first of such payments. Further, the Council voted to fund this appropriation by means of an "excessive tax levy" on Lake County property amounting to an additional four cents per $100 of assessed value. It was the County's decision to seek this levy that led to the present dispute with the State Tax Board.

Property tax levies for counties in Indiana are frozen at a particular level by law. See Ind.Code § 6–1.1–18.5 et seq. (1983 Supp.). A county that wishes to increase its levy above the statutory level generally must file a request for an excessive tax levy with the State Tax Board, which then refers the request for an initial consideration and recommendation by the local government tax control board. Ind.Code § 6–1.1–18.5–12 (1983 Supp.). Ultimately, the State Tax Board reviews this recommendation and enters a final decision on the request. Ind.Code § 6–1.1–18.5–15 (1983 Supp.). Lake County followed these procedures in requesting the excessive property tax levy at issue in this case, and the local government tax control board recommended that it be approved. Nevertheless, in January 1984 the State Tax Board denied the County's request.[1]

---

1. Beyond ruling on excessive property tax levy requests, the State Tax Board also conducts an annual review of each County's budget, and has the authority to revise, reduce, or increase the amounts budgeted. Ind.Code § 6–1.1–17–16 (1983 Supp.). Thus, when it denied Lake Coun-

ty's excessive tax levy request, the State Tax Board accordingly reduced the County's 1984 budget by $757,400.

For reasons that are not apparent from the record, the State Tax Board also reduced the County's 1984 budget for the item "Jail" by

On February 6, 1984, the County defendants filed with the district court a motion to add as parties the State Tax Board and its members (collectively referred to as "the State Tax Board defendants"), along with a "Petition for Authority for Funds to Comply with Judgments of the U.S. District Court" and a short "Claim for Relief." These pleadings described the events summarized above and averred that the County defendants could not obtain the funds necessary to comply with the court's orders absent the State Tax Board's approval of the excessive tax levy request. On February 8, the court found that joinder of the State Tax Board defendants was "necessary pursuant to rule 19(a)" of the Federal Rules of Civil Procedure,[2] and thus granted the County defendants' motion to add the State Tax Board defendants as parties "solely for the purpose of resolving issues relating to the corrections and improvements in conditions and practices at the Lake County, Indiana, Jail."

In response to the County defendants' petition, the State Tax Board defendants filed a memorandum arguing that the court lacked subject matter jurisdiction on several grounds, including the immunity granted to states under the Eleventh Amendment. The court heard argument on the petition at a hearing held on May 2, 1984. Treating the State Tax Board defendants' jurisdictional objections as a motion to dismiss the petition, the court denied it, concluding that the basis for the suit was a violation of federal constitutional rights, that the State Tax Board defendants had created an apparent impediment to the court's order aimed at eliminating these violations, and that the relief requested by the County defendants would not require expenditures

by the state of Indiana. The court therefore proceeded to hear testimony on the merits of the petition. The key witnesses for each side included Dennis Aloia, Financial Director for the Lake County Council, who explained why the Council viewed an increased property tax levy as the only appropriate method of financing the jail improvements required by the court, and Gordon McIntyre, a member of the State Tax Board, who testified as to the Board's belief that other sources of funding were both available and preferable to the excessive tax levy requested by the County.

On May 10, 1984, the court entered its final order mandating that the State Tax Board defendants permit the County to increase its property tax levy as requested and to appropriate "$757,400 each year after 1984 for the use of South Lake until such time as work is completed and monies no longer required to pay for the construction of these facilities and costs incidental thereto as required by the Judgment Order.... provided, however, that any excessive tax levy imposed by this order shall be removed the year following completion." The court supported the order with findings to the effect that the funds necessary to finance the mental health facility pursuant to the court's previous orders could not appropriately be obtained by any means other than the excessive property tax levy.

On appeal, the State Tax Board defendants basically reassert their contention that the district court lacked subject matter jurisdiction to order relief against them.

## II.

The threshold question on appeal is whether the Eleventh Amendment applies

---

$59,192. The district court's May 10, 1984 order ultimately required the State Tax Board to restore the full appropriation requested for "Jail" in Lake County's 1984 budget as well as to approve the County's excessive levy request. The former portion of the order, however, has subsequently been rendered moot, according to the court's recent decision of January 15, 1985 staying its May 10 order. In any event, the analysis we adopt today would apply equally to an order that the State Tax Board approve a particular appropriation in the County budget.

We therefore decline to discuss this aspect of the order further.

2. Rule 19(a)(1) provides:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties....

in this case so as to preclude the district court from granting prospective injunctive relief against the State Tax Board and/or its individual members. Our resolution of this question is aided significantly by a recent Supreme Court decision clarifying the principles governing the Eleventh Amendment. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Although the court below correctly found *Pennhurst* distinguishable from the present case because the claims at issue there were based on state rather than federal law, the Supreme Court's delineation of general principles applies to this as well as any other case presenting an Eleventh Amendment issue.

■ Simply stated, the Eleventh Amendment strips federal courts of the power to entertain suits against nonconsenting states, whether brought by their own citizens or by citizens of other states. *See id.* at 906–08. This ostensibly straightforward principle is complicated, however, by the question of "whether a particular suit in fact is a suit against a state." *Id.* at 908. The Supreme Court in *Pennhurst* provided a helpful structure for analyzing this latter question by classifying suits according to the character of the defendants. Suits against the first category of defendants, those naming a nonconsenting state or one of its agencies or departments, are clearly proscribed by the Eleventh Amendment "regardless of the nature of the relief sought." *Id.*[3] Provided that no ambiguity exists over whether a given entity constitutes an agency or department of the state, this rule should be relatively easy to apply.

■ As to suits against a second class of defendants, state officials, the Court explained:

Although prior decisions of this Court have not been entirely consistent on this issue, certain principles are well established. The Eleventh Amendment bars a suit against state officials when "the

state is the real, substantial party in interest." ... Thus, "[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter."

*Id.* (citations omitted). As further explanation for the general rule stated in the last sentence of this quotation, the Court in a footnote quoted the following passage from *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963): "The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting or to compel it to act.' " *See Pennhurst,* 104 S.Ct. at 908 n. 11. Finally, the Court in *Pennhurst* stated that "a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Id.* at 909.

Based on these principles, there is little question that the present suit, both as to the State Tax Board and as to its individual members, is a suit against the state of Indiana for Eleventh Amendment purposes. The State Tax Board clearly qualifies as a state agency or department under any meaningful definition. The pertinent Indiana statutes, for example, describe it as a "state board," Ind.Code § 6–1.1–30–1 (1982), and empower the Governor of Indiana to appoint its members, *id.,* and to remove such members on the ground of "incompetency, neglect, or inefficiency," Ind.Code § 6–1.1–30–3 (1982). The duties and functions of the State Tax Board, including those involved in this case (the review of County budget appropriations and requests for excessive property tax levies), further reveal its character as a state agency. *See also* Ind.Code § 6–1.1–30–14 (1982) (enumerating additional powers and duties of Board).

---

**3.** The state of Indiana clearly has not consented to suit in federal court. Its tort claims act expressly disclaims any intent to waive its Eleventh Amendment immunity. *See* Ind.Code § 34–4–16.7–3 (1982).

While the district court's judgment against the individual members of the State Tax Board in this case does not require the payment of funds out of the state treasury, the judgment nonetheless operates against the state of Indiana. By compelling the members to approve Lake County's tax levy request, the court intrudes on Indiana's chosen means of administering its statutory policy of limiting property tax increases by counties within the state. *See Dugan v. Rank,* 372 U.S. at 620, 83 S.Ct. at 1006. This impact alone raises serious federalism concerns that go to the heart of the Eleventh Amendment. *See, e.g., Pennhurst,* 104 S.Ct. at 908 ("in deciding this case we must be guided by '[t]he principles of federalism that inform Eleventh Amendment doctrine' ") (quoting *Hutto v. Finney,* 437 U.S. 678, 691, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978)); *Fair Assessment in Real Estate Ass'n v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981) (holding taxpayers barred by principle of comity from asserting § 1983 actions against validity of state tax systems in federal courts). Moreover, the aim of the County defendants' suit against the individual State Tax Board members is to compel them to act solely within their capacity as state officials. The real party in interest in this case is therefore the state of Indiana, and the individual members are merely nominal defendants. *See Shashoua v. Quern,* 612 F.2d 282, 284 (7th Cir.1979). *See also Production & Leasing, Ltd. v. Hotel Conquistador,* 709 F.2d 21, 22 (9th Cir.1983); *Miener v. State of Missouri,* 673 F.2d 969, 981 (8th Cir.), *cert. denied,* 459 U.S. 909, 916, 103 S.Ct. 215, 230, 74 L.Ed.2d 171, 182 (1982).

The County defendants nevertheless argue that the Eleventh Amendment is inapplicable here because the judgment against the State Tax Board defendants does not require payments out of the Indiana state treasury. In support of this argument, they cite *Miller-Davis Co. v. Illinois State Toll Highway Authority,* 567 F.2d 323, 327 (7th Cir.1977), wherein we identified the question of whether a judgment for the plaintiff would require such payments as a "critical" factor in determining whether the Eleventh Amendment applies to a particular state agency. *See also Oyler v. National Guard Ass'n of the United States,* 743 F.2d 545, 554 n. 9 (7th Cir.1984) (state would be real party in interest if it would bear financial burden of verdict against state official). We have never held, however, that this factor alone is dispositive in every case. *See Adden v. Middlebrooks,* 688 F.2d 1147, 1153 (7th Cir.1982) ("Although we think that the *Miller-Davis* test is an excellent basis for determining the identity of the real party in interest, it is not dispositive in the instant case.").

Nor could we adopt such a narrow approach to the applicability of the Eleventh Amendment consistent with the principles announced by the Supreme Court in *Pennhurst.* Rather, we are required to evaluate more generally whether a suit would interfere with public administration, or otherwise restrain or compel government action. *See Pennhurst,* 104 S.Ct. at 908 & n. 11. In addition, a holding that the Eleventh Amendment bars only those suits seeking a judgment requiring payments out of the state treasury would make meaningless the Court's holding—applicable regardless of the type of defendant involved—that the Amendment bars suits against the state whether they seek damages or injunctive relief. *Id.* at 908–09. *See also Cory v. White,* 457 U.S. 85, 91, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982). In sum, although the question of whether a judgment could affect the state treasury is relevant to our Eleventh Amendment inquiry, it does not end that inquiry in a case such as the present one, where the judgment will affect the state in a different but perhaps equally intrusive manner.

■ Notwithstanding the impact that a suit may have on a state, "[t]he Court has recognized an important exception to this general rule [of Eleventh Amendment immunity]: a suit challenging the constitutionality of a state official's action is not one against the State." *Pennhurst,* 104 S.Ct. at 909. This exception, drawn from *Ex parte Young,* 209 U.S. 123, 28 S.Ct.

441, 52 L.Ed.2d 714 (1908), "has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst*, 104 S.Ct. at 910. The *Ex parte Young* exception has been construed narrowly, however, and has been held inapplicable to suits naming a state or one of its agencies rather than an individual state official as a defendant, *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam), and to suits seeking retroactive rather than prospective injunctive relief, *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). *See Pennhurst*, 104 S.Ct. at 909.

■ Since the State Tax Board is an agency of the state of Indiana, the *Ex parte Young* exception does not apply and the district court therefore lacked jurisdiction to enter any order against the Board itself based on the Eleventh Amendment. This holding might have little practical effect, however, if the suit against the individual members is one challenging the constitutionality of their actions in denying Lake County's property tax levy request. If this is the nature of the suit, then the *Ex parte Young* exception would remove any Eleventh Amendment impediment to the order—which clearly constitutes prospective relief—insofar as it applies to the State Tax Board members. Any additional objections to the court's subject matter jurisdiction to enter the order against the members would also be removed because the court would have jurisdiction under 42 U.S.C. § 1983 (1982). *See, e.g., Toledo, Peoria & Western Railroad Co. v. State of Illinois*, 744 F.2d 1296, 1299 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1751, 84 L.Ed.2d 815 (1985).

We normally should have little trouble determining from the pleadings whether a given suit sufficiently alleges unconstitutional conduct by a state official so as to pass the jurisdictional hurdle of the Eleventh Amendment, but the ambiguity of the County defendants' pleadings in this case renders our task more difficult. The plead-ings filed by the Lake County defendants on February 6 contained neither a jurisdictional statement nor any other express indication of the statutory basis that they relied upon in seeking relief against the State Tax Board defendants. Indeed, the Lake County defendants seem to have proceeded through a series of motions and a hearing in the district court, and now even briefing and oral argument in this court, without ever stating in simple and straightforward terms the statutory basis for federal jurisdiction over their suit.

Despite the vagueness of the County defendants' pleadings, the circumstances of this case make us reluctant to dismiss it at this juncture on Eleventh Amendment grounds. First, the factual allegations in the County defendants' pleadings do provide some basis for their theory, which was finally enunciated in their reply memorandum submitted below and brief submitted here, that the court had jurisdiction "based on (1) the constitutional violations by the County, which is an arm and agent of the State and whose Eighth and Fourteenth Amendment violations of plaintiffs' rights constitute state action, and (2) the sole ability of the State Board under Indiana statutes to authorize the raising of public funds by the County defendants in Lake County in and under whose jurisdiction the federal constitutional violation occurred." As this court has explained previously, "[u]nder Rule 8(a)(1) of the Federal Rules of Civil Procedure, it is not essential that a complainant set forth the statutory basis for the court's jurisdiction in order for the court to assume jurisdiction, if the facts alleged provide a basis for the assumption of jurisdiction." *Rohler v. TRW, Inc.*, 576 F.2d 1260, 1264 (7th Cir.1978). *See also Loss v. Blankenship*, 673 F.2d 942, 950 (7th Cir.1982) ("Imperfections in pleading style will not divest a federal court of jurisdiction where the complaint as a whole reveals a proper basis for jurisdiction.").

Moreover, because the court below construed the County defendants' claim against the State Tax Board defendants as within the *Ex parte Young* exception and

thus proceeded to consider and decide the merits of the claim, we have the benefit of a hearing transcript and record to facilitate our review. Finally, because the jurisdictional question in this case of whether *Ex parte Young* applies is closely related to the question on the merits of whether the County defendants have stated a constitutional claim against the State Tax Board members, the parties' briefs and oral argument to this court have at least implicitly (and sometimes explicitly) addressed the latter as well as the former question.

We therefore proceed to consider the merits.

### III.

The County defendants' two theories for claiming that the State Tax Board defendants have a constitutional duty to approve the County's excessive tax levy request coincide with their two jurisdictional theories outlined above. The first theory, which the district court did not adopt as part of its rationale for granting relief, assumes that the state of Indiana is directly responsible for the existence—and therefore the elimination—of unconstitutional conditions in the Lake County Jail by virtue of an agency relationship between states and counties in Indiana. In support of this theory, the County defendants cite language from a case decided some time ago by the Indiana Supreme Court stating that a county in Indiana "is a political subdivision of the state, and a creature of the legislature and acts as the agent of the state." *County Department of Public Welfare v. Potthoff,* 220 Ind. 574, 581–82, 44 N.E.2d 494, 497 (1942). *Accord State ex rel. Board of Commissioners of the County of Hendricks v. Board of Commissioners of the County of Marion,* 170 Ind. 595, 608, 85 N.E. 513, 517 (1908).

Neither of these cases, however, supports the proposition asserted by the County defendants: that the state of Indiana is responsible as a principal for any constitutional violations committed by a county located within the state. Further, the status of Indiana counties has changed radically

since those cases were decided. Indiana counties now constitute the kind of independent governmental units that, by way of analogy, are not entitled to Indiana's Eleventh Amendment immunity. *See, e.g., Mt. Healthy School District Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977) (Eleventh Amendment "does not extend to counties and similar municipal corporations"); *Mackey v. Stanton,* 586 F.2d 1126, 1130–31 (7th Cir.1978) (stating same proposition and holding Eleventh Amendment inapplicable to Indiana county welfare department), *cert. denied,* 444 U.S. 882, 100 S.Ct. 172, 62 L.Ed.2d 112 (1979). *Cf. Wellman v. Trustees of Purdue University,* 581 F.Supp. 1228, 1229–31 (N.D.Ind.1984); *County Department of Public Welfare v. Stanton,* 545 F.Supp. 239, 243–45 (N.D.Ind.1982).

The Indiana Code defines a county as a "political subdivision" wholly separate from a "state agency," Ind.Code § 34–4–16.5–2 (1982), and as a "unit" under its provisions governing local government powers. Ind.Code § 36–1–2–23 (1982). A county thus has the authority to exercise a vast variety of traditionally sovereign functions such as to sue and be sued, Ind.Code § 36–1–4–3 (1982), to borrow money generally, Ind.Code § 36–1–4–9 (1982), to issue bonds for the purpose of paying judgments against it, Ind.Code § 5–1–8–1 (1982), and to compromise claims asserted against it, Ind.Code § 36–1–4–17 (1982). *See also* Ind. Code § 36–1–3–4(b)(2) (1982) (giving county "all other powers necessary or desirable in the conduct of its affairs, even though not granted by statute"); Ind.Code § 34–4–16.-7–1 (1982) (authorizing political subdivisions to pay civil rights judgments against their employees).

The responsibility for performing the particular sovereign function at issue here—maintaining a county jail—also falls on the County pursuant to Indiana statute. Ind.Code § 36–2–2–24 (1982) ("the [county] executive shall establish and maintain a . . . county jail"). Counsel for the State Tax Board defendants stated in oral argument before this court, and opposing counsel did

not argue to the contrary, that the state of Indiana has no control over the Lake County Jail, provides no services for it (inspectional or otherwise), and does not even have a contract with the County to house state prisoners there temporarily. Thus, based both on the nature of Indiana counties generally and on the state's lack of any specific responsibilities with respect to the Lake County Jail, we reject the County defendants' first theory.

■ In its January 15, 1985 memorandum decision staying its May 10 order against the State Tax Board defendants for reasons unrelated to this appeal, the district court stated: "Although the burden of compliance with the constitutional requirements in this case falls directly on local officials, the Indiana state officials may not indirectly impede compliance with those constitutional requirements without effectively abridging the constitutional rights enforced by this court's order." This statement embodies the gist of the County defendants' second theory for obtaining relief, which ultimately formed the basis for the district court's order against the State Tax Board defendants.

The County defendants seek support for this second theory in the venerable principle, drawn particularly from the school desegregation cases, that "state policy must give way when it operates to hinder vindication of federal constitutional guarantees." *North Carolina State Board of Education v. Swann,* 402 U.S. 43, 45, 91 S.Ct. 1284, 1286, 28 L.Ed.2d 586 (1971). *See also Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n,* 443 U.S. 658, 692–96, 99 S.Ct. 3055, 3077–80, 61 L.Ed.2d 823 (1979). In *North Carolina Board of Education,* the Court struck down North Carolina's anti-busing law on the basis that it would "inhibit or obstruct the operation of a unitary school system" in conflict with prior federal desegregation decrees. 402 U.S. at 45, 91 S.Ct. at 1286. *See also Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). The present case would call for a

unique application of the principle stated in *North Carolina Board of Education* because there has been no finding that the State Tax Board defendants or the state of Indiana were independently responsible for the violations of constitutional rights in the Lake County Jail so as to raise a duty to take all steps reasonably necessary to remedy those violations.

We nevertheless recognize that in some cases the conduct of one party—who has not previously been enjoined to take action to remedy the constitutional violations at issue—may in effect totally obstruct the efforts of a second party—who *has* been so enjoined—to remedy the violations. *Cf. North Carolina Board of Education,* 402 U.S. at 46, 91 S.Ct. at 1286 (anti-busing law "would deprive school authorities of *the one tool absolutely essential* to fulfillment of their constitutional obligation to eliminate existing dual school systems") (emphasis added). In such a case, the first party's conduct might constitute an independent violation of federal law. This principle must be given a very limited application, however, lest it provide license for federal courts to enjoin any action (or even inaction) that even minimally "hinders" efforts to vindicate constitutional rights in the sense of making these efforts somewhat more difficult. Such restraint is peculiarly important when a state or one of its agencies is charged with impeding the vindication of constitutional rights by means of its tax or fiscal policies. *See, e.g., New York State Ass'n for Retarded Children v. Casey,* 631 F.2d 162, 165–66 (2d Cir.1980); *Evans v. Buchanan,* 582 F.2d 750, 774–79 (3d Cir.1978), *cert. denied,* 446 U.S. 923, 100 S.Ct. 1862, 64 L.Ed.2d 278 (1980).

We need not determine the parameters of this principle in this case, however, because there has been no showing that the State Tax Board defendants' refusal to approve the County's excessive tax levy request so obstructs the County defendants' efforts to comply with the consent decree that this refusal alone violates the Constitution. Rather, perusal of both the testi-

mony from the May 2 hearing on the County defendants' petition and the district court's May 10 order reveals that while the County defendants and the district court concluded that the excessive tax levy was the *best* method of funding the improvements in the jail, this was not the *only* method for doing so.

In his testimony at the May 2 hearing, State Tax Board member Gordon McIntyre explained the Board's reasons for denying Lake County's excessive property tax levy request. McIntyre testified that the Board believed that the County's property tax rates were already much higher than those of other Indiana counties, and that the County could fund the jail improvements required by the court through other methods such as issuing bonds or simply reevaluating its spending priorities.[4] Dennis Aloia, Financial Director for the Lake County Council, testified that problems associated with such alternative funding methods had led the Council to seek financing by means of an excessive tax levy. Aloia did not testify that other funding sources were totally unavailable, but instead stated that use of those sources would require substantial reductions in other portions of the County budget. For example, Aloia testified that if the funds for the jail improvements were appropriated from the general fund of the County budget, the County might have to lay off half of the employees in the County Clerk's office.

Immediately after hearing this testimony, the court orally summarized the issue in the case as follows: "It comes down ... to be a dispute over which is the best method of funding the mandate of the Court, and even more precisely, who is to make that determination how funding should be done and what is the best method of doing it." In contrast, the court ultimately concluded in its May 10 order that: "Considering its current legal and contractual obligations, and the limitations on the use of its available funds under Indiana law, the Lake County defendants have no legal authority to acquire the funds necessary to comply with the judgment order without the approval of the State Tax Board." This latter statement appears at first glance to constitute a finding that it would be impossible for the County defendants to fund the jail improvements by any means other than the excessive tax levy.

Nevertheless, when considered as a whole, the district court's findings in its May 10 order do not establish that the court viewed Lake County's funding of the jail improvements by alternative sources as impossible, but rather that it viewed such funding as less desirable. The court found that none of the funding alternatives it considered would ultimately result in a lesser tax burden to the County's taxpayers. It found, for example, that if the County issued general obligation bonds to fund the jail improvements, it still would have to pay interest on the bonds, and the amount of such bonds already needed for funding public welfare and poor relief "greatly" exceeded the total amount that the County was permitted to issue under state law. Finally, the court concluded: "In summary, and of great importance, necessary services provided by other county departments should not suffer because of the need to meet constitutionally mandated improvements in the Lake County Jail."

Although we have no reason to hold these findings clearly erroneous, they do not provide a basis for ordering the State Tax Board to approve the excessive property tax levy for Lake County. Since the County—the party principally responsible for eliminating the unconstitutional conditions in its jail—has at its disposal other means of discharging its duties under the court's orders, we do not find the State Tax Board constitutionally liable for indirectly

---

**4.** McIntyre also testified to the State Tax Board's concern that if the requested excessive tax levy were approved, it would continue in perpetuity as part of the County's property tax base. This concern seems to be alleviated, however, by the district court's provision in its May 10 order that the excessive tax levy that it ordered the State Tax Board to approve would be removed after the required jail improvements had been completed and paid for by the County.

impeding the County's compliance with those orders. We therefore defer to the judgment of the State Tax Board, the body chosen by the state of Indiana to make such judgments, concerning Lake County's fiscal policies and priorities.

We recognize the district court's justifiable frustration over the continual delays in the implementation of jail improvements required by court orders now over four years old. Absent extraordinary circumstances not present here, however, the obligation to implement those improvements falls on Lake County, not on the state of Indiana or its State Tax Board.

For these reasons, we reverse.