Keith **RUEHMAN** and Alan **Miller,** Plaintiffs–Appellees,

v.

Michael **SHEAHAN,** Sheriff of Cook County, Illinois, Defendant–Appellant.

Nos. 93–4031, 94–1333.

United States Court of Appeals, Seventh Circuit.

Argued April 19, 1994.

Decided Sept. 6, 1994.

Thomas G. Morrissey (argued), Mary D. Cahill, Mary L. Boelcke, Chicago, IL, for plaintiffs-appellees.

Robert D. Quinlivan (argued), Chicago, IL, Mary Ellen Dienes, Northfield, IL, for defendant-appellant.

Before COFFEY, FLAUM, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Illinois courts issue arrest warrants faster than the police can execute them. Since 1982 the Sheriff of Cook County has used a computer called SPWA to track active warrants. The Sheriff's computer records more than 125,000 warrants. After a warrant issues from or is recalled by a court in Cook County, the Clerk of the Circuit Court puts a copy into a Sheriff's basket at the Clerk's office. Someone from the Sheriff's office periodically picks up these papers so that warrant clerks can enter them into SPWA. His staff keeps the paper records in separate files. The Clerk's office keeps a computer database of felony warrants; every month, the Clerk sends the Sheriff a list of non-traffic warrants and recall orders so the Sheriff can update his computer records. Although only the Sheriff's office has direct access to SPWA, other law enforcement agencies often ask for information by telephone or teletype, and the Sheriff obliges. The state police manage LEADS, a database that includes all active warrants in the state. Any officer who pulls over a motorist or questions a passerby can check with LEADS and SPWA to determine if the person is wanted in Illinois.

Keith Ruehman and Alan Miller accuse the Sheriff of neglecting to purge their warrants from SPWA, leading to their unlawful arrests by other law enforcement agencies in Illinois. A state judge sentenced Miller to seven days in jail for violating the terms of court supervision. Miller did not surrender as ordered; an arrest warrant was issued on August 31, 1989. Miller turned himself in one week later and served his term. The judge recalled Miller's warrant on September 7. On

September 20 the Sheriff's staff entered the warrant into SPWA; the three-week delay is unexplained, as is the fact that the order of September 7 passed unnoticed in the Sheriff's office. The Sheriff forwarded a copy of the warrant to the Dolton police, who entered the warrant into the LEADS database. Miller was riding with friends in a car four months later. Oak Forest Police pulled the car over and found Miller's name in LEADS. A police dispatcher checked with SPWA, which confirmed that the Sheriff still thought Miller a fugitive. Miller was carrying an uncertified copy of the quash-and-recall order, but the police thought the computers more credible and arrested him.

Ruehman was arrested for drunk driving in 1986. He posted a bond but failed to appear in court in October 1986, and a warrant issued for his arrest. He voluntarily came to court in January 1987 and served 90 days in jail. The judge orally ordered the warrant recalled. State police cleared it from LEADS on January 12, 1987. The Sheriff claims not to have received a copy of the recall order and did not purge SPWA. Four years later, a Chicago Ridge officer stopped Ruehman's car and found that LEADS gave no reference to his name. The 1986 warrant was still in SPWA's memory banks, however. The police held Ruehman for more than 14 hours before finding the mistake.

Plaintiffs insist that proper training of clerks and regular auditing of SPWA would have saved them embarrassment and hardship. They say that the Sheriff's office didn't bother to check the SPWA database against the files in the Clerk's Office or State's Attorney's office for outdated traffic warrants (although it did cross-check for felony warrants), and that the Sheriff ignored warnings from his subordinates that inaccurate data permeated the system. The manual for the LEADS system requires regular auditing of all warrants against the Clerk's database; the Sheriff does not take this precaution. Had warrant clerks entered Miller's quash order into SPWA, Oak Forest Police would not have arrested Miller. Had the Sheriff checked his computer against the hard copies of court orders or the Clerk's files—even once in four years—he would have found that Ruehman

was no longer wanted. Plaintiffs say that the Sheriff's policies led to many recalled warrants being reported as active although simple safeguards—which the state police observe—could have prevented erroneous arrests.

Ruehman and Miller sued under 42 U.S.C. § 1983 everyone arguably involved with their arrests—the Sheriff in his individual and official capacities, the arresting officers, the Clerk of the Circuit Court of Cook County, several municipalities, and the municipalities' chiefs of police. The district court quickly dismissed the arresting officers on the ground of immunity, leading the plaintiffs to concentrate on the Sheriff. Yet the assumption that the police have immunity is questionable. *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), tells us that officers may treat information that a warrant is outstanding for a suspect's arrest as presumptively correct, but when "the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." *Id.* at 568, 91 S.Ct. at 1037. See also *United States v. Hensley,* 469 U.S. 221, 232, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). An arrest without benefit of probable cause is illegal, no matter what the officers believed. Do persons who rely on incorrect information that a warrant exists receive immunity? We broached but did not resolve a similar issue in *Gordon v. Degelmann,* 29 F.3d 295, 299–300 (7th Cir.1994). Qualified immunity protects those who act in the shadow of legal uncertainty, *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), but the errors here were entirely factual. Perhaps there is an open legal question whether officers may rely on a warrant-tracking system such as SPWA. See *Duckett v. Cedar Park,* 950 F.2d 272 (5th Cir.1992). We need not pursue the question, because the Sheriff is the only appellant (so far). In his official capacity, the Sheriff cannot claim qualified immunity. Instead he seeks shelter from the eleventh amendment, commonly called an "immunity" but actually a restriction on the jurisdiction of the federal courts.

The district court denied the Sheriff's motion to dismiss, 842 F.Supp. 1043 (N.D.Ill.1993), and he immediately appealed. *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.,* —— U.S. ——, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993). The only parties to this appeal are Ruehman, Miller, and the Sheriff in his official capacity—which is to say, as a proxy for the polity of which he is an official. *Will v. Michigan Department of State Police,* 491 U.S. 58, 70–71, 109 S.Ct. 2304, 2311–12, 105 L.Ed.2d 45 (1991).

But which polity is that? Everything depends on the answer, for although states and their agencies are protected by the eleventh amendment, *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), counties and municipalities are not. *Lincoln County v. Luning,* 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890); *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471 (1977). An official-capacity suit challenging the execution of the warrants would be a suit against the state, because state courts issued the warrants. See *Ex parte Virginia,* 100 U.S. 339, 25 L.Ed. 676 (1879). Plaintiffs seek to avoid this pitfall by protesting the Sheriff's design of the warrant-tracking system. Their theory is that in designing and implementing SPWA, the Sheriff acted for Cook County.

If this strategy works, it may solve the plaintiffs' eleventh amendment problem at the expense of undercutting their claim against the Sheriff on the merits. The fourth amendment uses an objective standard, but the due process clause of the fourteenth amendment "applie[s] to deliberate decisions of government officials to deprive a person of life, liberty or property." *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). See also *Archie v. Racine,* 847 F.2d 1211 (7th Cir.1988) (en banc). Plaintiffs do not contend that the Sheriff deliberately buried the quash-and-recall orders because he likes to arrest people without cause. Plaintiffs characterize their claims as protesting the Sheriff's "failure to heed warnings" about the system and "failure to audit" the system. Such allegations do not make out a constitutional tort.

See *Collins v. Harker Heights,* —— U.S. ——, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Negligence, if that is what the Sheriff's decisions come to, does not violate the due process clause. See *Mitchell v. Aluisi,* 872 F.2d 577 (4th Cir.1989) (sheriff not liable under § 1983 for negligently failing to recall a warrant). Ruehman and Miller might win on a state-law negligence theory, but errors of state law do not automatically violate the Constitution, even if they lead to improper arrests. *Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979); cf. *Albright v. Oliver,* —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

On this interlocutory appeal, however, the only question presented is the *jurisdictional* consequence of the plaintiffs' theory. By casting their claim as they do, have the plaintiffs effectively sued the State of Illinois? Plaintiffs say not, because they do not want Illinois to pay them anything (they think that Cook County should pay), but this is not dispositive. It is not enough to ask who will pay if the Sheriff loses. The constitutional question is whether the suit is against a state. See *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908–09, 79 L.Ed.2d 67 (1984). A drain on the state treasury is not a necessary condition of an affirmative answer. *Paschal v. Jackson,* 936 F.2d 940 (7th Cir. 1991); *Jensen v. State Board of Tax Commissioners,* 763 F.2d 272 (7th Cir.1985).

Under Illinois law, a sheriff is the chief law enforcement official of each county and therefore is not a state officer. Ill. Const. Art. VII § 4(c). See also *People ex rel. Davis v. Nellis,* 249 Ill. 12, 23, 94 N.E. 165, 169 (1911). But a sheriff does not serve the county alone. He also follows orders from state courts. When he does so, we recognized in *Scott v. O'Grady,* 975 F.2d 366 (7th Cir.1992), he acts as a state officer, and a suit protesting his activities is a suit against the state. Any other approach would allow a federal court to frustrate the achievement of state policy. *Id.* at 371. A state acts only through agents, and at times a sheriff plays this role for Illinois. Therefore, *Scott* holds, a suit against a sheriff for executing a writ of assistance issued by a state court would in-

terfere with the court's efforts to carry out state law, and so is a suit against the state.

Sheriff Sheahan contends that in designing and implementing the SPWA system he is equally an agent of Illinois. Well, would holding him liable for errors in the design and operation of the warrant-tracking system interfere with state policy (as opposed to county policy)? The way the district court saw things, everything turns on whether the Sheriff exercises discretion in running SPWA. That is surely part of the question under the eleventh amendment. The Sheriff is a state agent to the extent state law directs his activities. That was the case in *Scott*—in executing the writ, the Sheriff was obeying a command of the state court. It does not follow, however, that *only* persons whose every step is guided by positive law are acting for the state. Consider a member of the Governor's Cabinet. Such officials typically exercise a great deal of discretion, but that does not mean that they are acting for themselves. They exercise discretion in the name of the state. The effects of their choices are "state policy," and to interfere with their discretion is to change state policy. Is this a good characterization of the relation among the Sheriff, SPWA, and Illinois?

To show that his design decisions constitute state policy—or perhaps that the state wants him to make the decisions he did—the Sheriff relies on the following provision of state law: "Each Sheriff shall, in person or by deputy, attend upon all courts held in his or her county when in session, and obey the lawful orders and directions of the court." 55 ILCS 5/3–6023. This statute requires each sheriff to provide security in court and implement the court's orders. What has this to do with warrant-tracking computers? In the district court the Sheriff admitted that the answer is: "Nothing." In this court the Sheriff banked on a memorandum by Circuit Judge Gerrity regarding warrant tracking. At oral argument, however, counsel for the Sheriff conceded that, although the Circuit Court of Cook County directs him to execute valid warrants and disregard quashed ones, it exercises no control over the management of SPWA. The Gerrity memo reports procedures followed by law enforcement agencies in tracking warrants and does not order the Sheriff to use any particular procedures. The memo emphasizes that law enforcement should promptly enter recall orders without saying a whit about how it should be done. The Sheriff has not alerted us to authority that requires him to use any computer system—let alone this one—to track warrants. A county agency, under the president of the county board, specified the design of SPWA. The system, then, is designed and supervised from top to bottom by the Sheriff and the county government. State law requires the Sheriff to arrest the right people but says nothing about how he should do it. Design and auditing decisions have been left entirely to him. He could junk SPWA tomorrow, or alter its every detail, without thwarting any state policy or law. Each sheriff in Illinois is free to take a unique approach. A suit against the Sheriff would not prevent the state from later taking over the task of tracking warrants through, say, a single computer in the Clerk's Office. SPWA allows the Sheriff to find warrants faster than if he had to check with the Clerk's Office in the first instance, but is not the product of a state directive. It follows that in designing and implementing SPWA the Sheriff is not acting as the State of Illinois.

Sheriff Sheahan insists that because warrants and recall orders are state directives addressed to him, under state law he can be held in contempt of court for arresting a person on a quashed warrant. Just so. But he is in trouble for violating, not for following, this aspect of state law. That the Sheriff failed to follow a state court order does not necessarily keep him from acting "under color of state law." *Ex parte Virginia*, 100 U.S. at 348; cf. *Florida Department of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982). But the state's ability to punish him for careless handling of the warrant-tracking system is hardly evidence that will help the Sheriff show that he was an arm of the state. Private actors, too, face punishment for violating state rules. As we have stressed, in pursuing a due process theory against the Sheriff the plaintiffs may find obstacles such as *Dan-*

*iels* too steep to surmount. But they are not defeated by the eleventh amendment.

AFFIRMED.