Charles J. HARRIS, Jr.,
Plaintiff–Appellant,

v.

CITY OF MARION, INDIANA, et al., Defendants–Appellees.

No. 95–2060.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 15, 1995.

Decided March 19, 1996.

P. Robert Dawalt, Jr. (argued and briefed), Marion, IN, for Plaintiff-Appellant.

Robert T. Keen, Jr. (argued and briefed), Diana C. Bauer, Miller, Carson, Boxberger & Murphy, Fort Wayne, IN, for Defendants-Appellees except Lawson.

Michael R. Morow (argued and briefed), Stephenson, Daly, Morow & Kurnik, Indianapolis, IN, for Defendant-Appellee Lawson.

Before ESCHBACH, MANION, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

This case involves an arrest that should never have taken place, and the duty of local governments to take steps to prevent these kinds of mistakes. Charles Harris sued David Homer, the Police Chief of Marion, Indiana, Officer Edmond Hook of the Police Department, the City of Marion, and Sheriff John Lawson, of Grant County, Indiana, seeking damages under 42 U.S.C. § 1983 for violations of his Fourth Amendment rights. Acting pursuant to 28 U.S.C. § 636(c), the magistrate judge granted all the defendants' motions for summary judgment. Notwithstanding the frustrating nature of the experience Harris had to endure, we conclude that the district court's judgment was correct, and we therefore affirm.

## I.

In a move he came to regret, Charles J. Harris summoned the Marion, Indiana, Police Department on the evening of April 1, 1994, to assist him in a domestic problem. While en route to the Harris residence, Officer Edmond Hook contacted the Marion Police dispatcher to see if there were any outstanding warrants on Harris. After Hook arrived at Harris's home, the dispatcher told him that there was indeed an outstanding felony arrest warrant for Harris from the Grant County court. When Hook informed Harris about the warrant, Harris insisted that there must be a mistake. Hook accordingly double-checked both with the Marion Police dispatcher and the Grant County Sheriff's office. Both sources confirmed that there was an outstanding warrant for Har-

ris's arrest. Hook then arrested Harris and took him to the Grant County jail.

Upon further thought, Harris and his girlfriend, Betsy Smith, began to suspect that the warrant might have been related to an earlier incident that had been resolved. On August 18, 1992, the Grant County court had issued a felony bench warrant for Harris's arrest in connection with a charge of driving with a suspended license. On October 21, 1993, Harris pleaded guilty to a lesser offense, and on October 25, 1993, the court imposed a $500 fine plus court costs and suspended his license for 90 days. On December 9, 1993, Harris paid all the fines and costs, and the case was closed. One final detail, however, slipped between the cracks: the court never recalled the warrant, and it therefore was still outstanding when Hook checked the records on April 1, 1994.

About an hour after Harris was arrested, Smith collected the court documents related to the 1992 charge and the receipts showing that the fines had been paid, and she took them to the County Sheriff's department. They refused to release Harris, telling Smith instead that she had to discuss the matter with the Marion Police Department. Between Friday evening and Saturday afternoon Smith made a number of attempts to demonstrate that Harris's arrest was a mistake, by showing the documents to individuals in the Sheriff's Department, the Marion Police Department, and the Grant County Jail. Eventually, someone told her that she would have to take the matter up with the Clerk of the Grant Superior Court, which would not be open until Monday. On Monday morning, April 4, 1994, Smith went to the Clerk's office, presented the papers, and Harris was released.

Harris later sued Officer Hook in his individual capacity and Chief Homer and Sheriff Lawson in their official capacities only. The City of Marion was added as a defendant because the suit against Chief Homer was necessarily one against the city. See *Reed v. Village of Shorewood,* 704 F.2d 943, 953 (7th Cir.1983). He claimed that the City of Marion, Chief Homer, and Sheriff Lawson had failed to implement adequate policies to insure the validity of arrest warrants, and that

these omissions had caused him to be subject to unlawful arrest and excessive detention. He claimed that Officer Hook had arrested him without probable cause and used excessive force in making the arrest.

## II.

Harris's claims against the City of Marion, Chief Homer, and Sheriff Lawson all depend upon his ability to show that either the City (for the City itself and Chief Homer) or the County (for Sheriff Lawson) had a policy or custom that caused the alleged violation of his Fourth Amendment rights. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Harris does not claim that the City, Chief Homer, or the Sheriff had an affirmative policy of arresting people without probable cause or of arresting them based on warrants that should have been recalled. Nor does he claim that they had a custom or practice permitting such arrests or detentions. Instead, he relies on the line of cases that hold that the failure to select or implement necessary practices can constitute a "policy or custom" for purposes of a *Monell* § 1983 suit, if that failure causes a constitutional violation. See *Collins v. City of Harker Heights*, 503 U.S. 115, 123–24, 112 S.Ct. 1061, 1067–68, 117 L.Ed.2d 261 (1992); *City of Canton,. Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989); *Cornfield by Lewis v. School Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir.1993).

In response to the defendants' motions for summary judgment, Harris presented the following materials. First, he established that the municipal police department depends on the Sheriff's office to furnish information about warrants. The Sheriff's office in turn uses an on-line computer system to gain access to the Grant Superior Court's docket. Only one employee of the Sheriff's office, Sergeant Mark Florence, is trained to use the on-line service. At his deposition, Sergeant Florence testified that, had he been on duty when Harris was arrested, he would have logged on to the on-line docket and he would have noticed the discrepancy between the warrant and the information in the docket. Sergeant Florence also testified that he would have tried to call the Judge at home to see if the warrant was still valid. On one other occasion, Florence had a similar case involving a warrant discrepancy in which he contacted a judge at home and the judge told Florence to direct the individual to appear on the next court date.

In their materials supporting summary judgment, the City, Chief Homer, and Sheriff Lawson emphasized the fact that the arrest warrant had never been quashed or recalled by the Grant County Court, unlike the warrants in *Hvorcik v. Sheahan*, 847 F.Supp. 1414 (N.D.Ill.1994), and *Ruehman v. Village of Palos Park*, 842 F.Supp. 1043 (N.D.Ill. 1993), *aff'd*, 34 F.3d 525 (7th Cir.1994). Thus, even a system ensuring twenty-four hour access to the court's records would have shown that the warrant · was still active. With respect to Sergeant Florence, they stress first that he could recall at most one time in eighteen years of experience in the Sheriff's office when something similar had occurred. They also argue that it is sheer speculation to assume that Florence could have contacted the judge, and that the judge in turn would have taken any action prior to the Monday morning when Harris was released anyway. Finally, Sheriff Lawson stated in his affidavit that he was not aware of any prior incidents in which the Marion Police Department or any other police department brought someone to the Grant County Jail on a warrant that should have been recalled, nor could he recall any incident in which a person was incarcerated in the Jail under such circumstances.

■ This court reviews a district court's decision to grant summary judgment de novo, taking the record in the light most favorable to the party opposing the motion. *Metropolitan School Dist. of Wayne Township v. Davila*, 969 F.2d 485, 488 (7th Cir. 1992), *cert. denied*, 507 U.S. 949, 113 S.Ct. 1360, 122 L.Ed.2d 740 (1993). Where a municipality has failed to make a policy in a situation that calls for procedures, rules, or regulations, the failure itself might be actionable, if, as the Supreme Court emphasized in *Collins*, the complaint otherwise alleges a constitutional violation. In those situations, however, the plaintiff generally must allege a

pattern or series of incidents of unconstitutional conduct or a clear constitutional duty to take action because the situation was certain to recur. See *Cornfield*, 991 F.2d at 1326–27. The plaintiff must support those allegations under Fed.R.Civ.P. 56(e) to withstand summary judgment. In addition, the municipality's inaction must amount to deliberate indifference, so that it is fair to infer that the inaction is itself a "policy." See *Canton*, 489 U.S. at 389, 109 S.Ct. at 1205; *Cornfield*, 991 F.2d at 1327.

■ No matter how Harris's claim is viewed, it is plain that he cannot survive these hurdles. The undisputed evidence showed at most one incident similar to the one he suffered over an eighteen-year period in the Sheriff's office. One incident cannot be bootstrapped into a pattern. Harris argues that he may have been able to discover other similar incidents if the case had gone forward, but he does not argue here either that he moved for an order under Rule 56(f) or that there is any reason to believe additional discovery would be fruitful.

Harris's efforts to show that the lack of 24–hour access to the court's docket amounted to deliberate indifference are similarly unavailing. No one in the Police Department, the County Sheriff's office, or the Jail would have any reason to believe that the systems they had in place were faulty if they had led to only one problem in an eighteen-year period of time. The Supreme Court in *Canton* distinguished between a city's deliberate or conscious choice not to have a training program, which can fairly be characterized as a municipal policy, and the city's occasional negligent administration of an otherwise sound program. At most, we have here an example of the second type of problem. Furthermore, Harris admits that neither the Sheriff nor the Police Department could have done anything about the warrant on their own. Sergeant Florence's speculation that he might have found the judge on a Friday night or over the weekend, and that the judge might have been willing to act on the case immediately, highlights a crucial problem with Harris's theory of the case: only the court was empowered to correct the error that harmed him, but he cannot sue

the court. No amount of further fact-finding could tell us whether the courts of Grant County would be willing themselves to implement a 24–hour judge response team, in response to a hypothetical 24–hour on-line access system that might pick up active warrants that should have been recalled.

Because Harris has not shown that the actions of which he complains stemmed from any kind of official policy, as required by *Monell,* he cannot prevail. We therefore do not reach the question when, or in what circumstances, a failure on the part of the court system to keep its arrest warrants up-to-date might subject the City and/or County to liability under § 1983. Cf. *Arizona v. Evans,* —— U.S. ——, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995); *Ruehman v. Sheahan,* 34 F.3d 525, 528 (7th Cir.1994). Neither the defendants nor the plaintiff have argued these points, and so we too will leave them for another day.

■ With respect to Officer Hook, there is nothing left of Harris's case at this point. The district court granted summary judgment for Hook based on both qualified and absolute immunity with respect to the claim that Hook arrested Harris without probable cause. The court ruled that Harris could not prevail on the excessive force claims because he failed to assert them in his complaint and because the evidence indicated that Hook was entitled to prevail as a matter of law. Harris has not addressed any of the claims against Hook in his appellate brief. He has therefore waived these issues on appeal. See *Luddington v. Indiana Bell Telephone Co.,* 966 F.2d 225, 230 (7th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 1641, 128 L.Ed.2d 362 (1994); Fed.R.App.P. 28(a)(6).

### III.

For the reasons stated, we AFFIRM the district court's judgment dismissing the claims against all four defendants.