geant Timothy Murphy, individually and as a member of the Calumet City Police Department, Other Unknown Officers of the Calumet City Police Department, and Calumet City, Illinois, an Illinois Municipal Corporation and a body politic, Defendants.[1]

No. 99 C 5099.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 14, 1999.

---

**Lenette JOHNSON and Gloria Saddler, Plaintiffs,**

v.

**Officer Ronald SANDIDGE, individually and as a member of the Calumet City Police Department, Officer Ronald Reddington, individually and as a member of the Calumet City Police Department, Officer George Jones, individually and as a member of the Calumet City Police Department, Ser-**

---

1. Plaintiffs' complaint also names officer Donald Rector as a defendant, but his name is omitted from all subsequent pleadings, and so we make no assumptions as to his participation in the events related herein.

Anthony T. Capua, John P. De Rose, John P. De Rose & Associates, Burr Ridge, IL, for Plaintiffs.

Edward A. Antonietti, Ronald Kawanna, Jr., Gulotta & Kawanna, Calumet City, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge.

Plaintiffs Lenette Johnson and Gloria Saddler brought a seven-count complaint against the municipality of Calumet City and several of its police officers stemming from the plaintiffs' arrest and four-hour detention on charges of disorderly conduct and battery, charges that were eventually dismissed. Calumet City has moved to dismiss as to itself Counts I and IV of the complaint, which allege violations of 42 U.S.C. § 1983 and malicious prosecution under § 1983, respectively. Because we find that the plaintiffs have failed to allege the existence of a policy or custom of Calumet City as the source of the alleged constitutional violations, we grant the City's motion to dismiss.

According to the complaint, whose facts we must take as true when deciding a motion to dismiss, *Kaplan v. Shure Bros.*, 153 F.3d 413, 417–18 (7th Cir.1998), on September 26, 1998, several of the named defendants entered plaintiff Johnson's home without warning during a party she held to celebrate her birthday. Without explanation and without a warrant, the officers arrested Johnson, "manhandled" her, and handcuffed her to her balcony in view of her neighbors. When plaintiff Saddler—Johnson's mother—protested the treatment of her daughter, the officers arrested her as well. Plaintiffs allege they were then subjected to physical and verbal abuse at the Calumet City Police Department by officers Sandidge and Jones, as well as by Sergeant Murphy. Additionally, plaintiffs allege that officer Sandidge, a male officer, threatened to perform a body search on Johnson, a female.

In Count I of the complaint, the plaintiffs allege that "CALUMET CITY had a policy of permitting its police offi-

cers to violate the rights of its citizens." They then allege that "[T]he policy of CALUMET CITY was a cause of the violation of Plaintiffs' constitutional rights." These two paragraphs comprise the sum total of plaintiffs' allegations that Calumet City maintained any sort of unconstitutional policy towards its citizens. Calumet City argues that the paragraphs are insufficient to allege that any of its policies caused a deprivation of the plaintiffs' constitutional rights, as is required to find a municipality liable under § 1983 for acts taken by its employees. *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). As Calumet City points out, the Seventh Circuit and the Supreme Court require an affirmative causal link between the alleged misconduct and the purported municipal policy, such as through actual or implied municipal knowledge of the custom and its consequences on various individuals. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Sims v. Mulcahy*, 902 F.2d 524, 543 (7th Cir.1990). Calumet City contends that the complaint alleges no such affirmative link. We agree. The Seventh Circuit has repeatedly held that " '[b]oilerplate allegations of a municipal policy, entirely lacking in any factual support that a [municipal] policy does exist, are insufficient' and render allegations of such a policy 'mere legal conclusion of section 1983 liability devoid of any well-pleaded facts.' " *Silva v. City of Chicago*, No. 94 C 7228, 1996 WL 535244, at *3 (N.D.Ill. Sept.18, 1996) (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382–83 (7th Cir.1995)). In *Silva*, the court held that the complaint's allegation that "[t]he actions of the individual defendants were part of the regular practice and procedure of the Organized Crime section of the City's police department," was insufficient to state a claim for municipal liability under § 1983. *Id.* at *3. Here, the plaintiffs' complaint makes similarly vague and boilerplate allegations.

■ In fact, the instant complaint fails to state a cause of action under *any* of the three accepted theories for finding municipal liability under § 1983: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law'; or (3) an allegation that the constitutional injury was caused by a person with 'final policymaking authority.' " *McTigue*, 60 F.3d at 381, (citing *Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir.1994) (citations omitted)). The plaintiffs contend that by reading the complaint as an a whole one can infer allegations of both a widespread custom that has the force of law as well as an injury caused by a person with final policymaking authority, but they are incorrect.

■ The plaintiffs fail to allege the existence of a widespread custom of Calumet City because they do not show "a pattern of conduct, including incidents other than in the plaintiff's own case, leading to an inference that such custom, policy, or practice must exist." *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir.1985). Allegations of *multiple* incidents are required because a municipality can be held liable only if it had actual or imputed awareness of the custom and its consequences, thereby showing the municipality's approval of the alleged unconstitutional violation. *See Sims*, 902 F.2d at 543.

The plaintiffs' allegations concern a single incident that involved only the two of them; the fact that several officers allegedly participated in the constitutional violations is of no import. *See Silva*, 1996 WL 535244, at *4 (holding that allegations that several officers violated plaintiff's rights on three occasions cannot indicate the existence of a municipal policy). Similarly, we disagree with the plaintiffs' assertions that the complaint alleges "two distinct arrests" sufficient to show unlawful "incidents other than in the plaintiff's own case." The plaintiffs' arrests occurred nearly simultaneously in the same place

and by the same officers and were therefore part of a single event. There is no way that Calumet City could have been put on notice that its officers were allegedly participating in unconstitutional behavior after the first plaintiff's arrest but before the arrest of the second plaintiff, so we can make no inference that the City approved of or directed its officers' behavior.

■ We also find that the plaintiffs have failed to allege any constitutional violations by anyone with final policymaking authority. Plaintiffs ask us to infer that Sergeant Murphy had final policymaking authority merely because he held the title of "sergeant". However, the plaintiffs have not alleged a single fact to support this claim, and their contention flies squarely in the face of Seventh Circuit precedent holding that police sergeants are *not* policymakers. *See Wilson v. City of Chicago*, 6 F.3d 1233, 1240 (7th Cir.1993) (holding that a police superintendent—a level higher than sergeant—is not a policymaker); *Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir.1992) (finding that policymaking authority for the Chicago Police Department is vested in the Police Board).

■ Finally, the plaintiffs argue that Calumet City had a duty to institute a policy prohibiting body searches by the opposite sex, and that because it did not do so, it should be liable for being "indifferent" to the plaintiffs' rights. The plaintiffs contend that officer Sandidge's mere threat to conduct a body search of Johnson demonstrates that Calumet City did not have a policy regarding body searches. However, even assuming that Calumet City had no policy regarding body searches, the plaintiffs' complaint does not demonstrate that a constitutional violation stemmed from the lack of such a policy. The plaintiffs must allege a pattern or series of incidents of unconstitutional con-

duct or a clear duty to take action to correct a situation that was bound to recur. *See Harris v. City of Marion, Indiana,* 79 F.3d 56, 58–59 (7th Cir.1996). The plaintiffs do neither. They do not allege that officer Sandidge or any other male officer actually conducted a body search of Johnson, nor do they allege that Calumet City police officers customarily conduct body searches of the opposite sex. Instead, plaintiffs allege a single threat of a body search that apparently did not occur once they objected.[2] Without allegations of a number of incidents involving actual body searches by members of the opposite sex, the plaintiffs' claim cannot stand.

We will also dismiss count IV of the complaint which alleges municipal violations of § 1983 by malicious prosecution, because it suffers from the same deficiencies as count I. Even reading the complaint as a whole, as the plaintiffs urge us to do, they have failed to state a claim that Calumet City is liable for a violation of § 1983. For the foregoing reasons, we grant defendant Calumet City's motion to dismiss counts I and IV of the complaint with regard to the municipality. We also grant the plaintiffs' request to amend their complaint, to the extent they are able to do so consistent with this opinion. It is so ordered.

---

**2.** The situation here is quite different from that in *Iskander v. Village of Forest Park,* 690 F.2d 126 (7th Cir.1982), where the court upheld a jury finding that the defendant municipality actually had an unlawful practice conducting strip searches of individuals in front of an open window. There, the plaintiff presented evidence that she, as well as numerous others, had been victims of such a practice.